59   345
Case 1
145   298

[No. 10,514.—Department Two.]

## THE PEOPLE *v.* H. E. BROWN.

MURDER—EVIDENCE—REASONABLE DOUBT—INSTRUCTIONS.—Upon the trial of an indictment for murder, the Court instructed the jury as follows: "You are not legally bound to acquit him (the defendant), because you may not be entirely satisfied that the defendant, and no other person, committed the alleged offense. *Held:* The instruction was erroneous.

APPEAL from a judgment of conviction in the Superior Court of Mendocino County.

The defendant was indicted jointly with Samuel Carr, John Billings, and George Gaunce, for the murder of William Wright. For the facts of the killing see *People* v. *Brown* (No. 10,601), reported *infra,* p. 345.

*J. A. Cooper,* for Appellant.

No brief on file for Respondent.

---

[No. 10,601.—Department One.]

## THE PEOPLE *v.* H. E. BROWN.

MURDER — EVIDENCE—WARRANT—ARREST—MANSLAUGHTER.—Indictment against the defendant and others for the murder of one W. The deceased was one of a *posse comitatus,* called out by a constable to assist in the arrest of the defendant and others, indicted under a warrant

against them by fictitious names for malicious mischief. While in pursuit, and before coming in sight of defendant and his co-defendants, the party was fired upon by them from ambush, and the deceased and one other of the party killed. Upon the trial, the warrant referred to was offered in evidence, and objected to by defendant on the ground that the same appeared to be void on its face, but was admitted by the Court. *Held,* the warrant was admissible.

Iᴅ.—Iᴅ.—Iᴅ.—Iᴅ.—Iᴅ.—Iɴsᴛʀᴜᴄᴛɪᴏɴs.—*Held, further:* The instructions asked by the defendant, as to the effect of the warrant, were properly refused.

Iᴅ.—Iᴅ.—Cᴏɴsᴘɪʀᴀᴄʏ—Aᴄᴛs ᴀɴᴅ Dᴇᴄʟᴀʀᴀᴛɪᴏɴs ᴏғ Cᴏ-ᴄᴏɴsᴘɪʀᴀᴛᴏʀs.—C., one of the parties indicted, after testifying that he and the others indicted had formed a conspiracy to rob the Tax Collector, and that they had agreed that they would resist arrest and use their arms on anybody that attacked them, was permitted to testify as to the acts and declarations of the parties to the conspiracy. *Held:* The evidence was admissible.

Iᴅ.—Iᴅ.—Iᴅ.—Iɴsᴛʀᴜᴄᴛɪᴏɴs.—The Court did not err in its instructions to the jury upon this subject.

Iᴅ.—Iᴅ.—Rᴇs Gᴇsᴛᴀ.—The evidence of the deceased at the time he was shot, "Oh, God! oh, my God!" was admissible as part of the *res gestæ.*

Iᴅ.—Iᴅ.—Aᴅᴍɪssɪᴏɴs.—The prosecution proved by the witness M. (without objection and with the express consent of the defendant), a conversation which occurred between the witness and defendant in the presence of one N., and N. testified to the same conversation; but the Court, upon objection by the prosecution, refused to permit the defendant to question N. as to other conversations. *Held:* The objection was properly sustained.

Iᴅ.—Iɴsᴛʀᴜᴄᴛɪᴏɴs—Wᴀʀʀᴀɴᴛ—Aʀʀᴇsᴛ—Mᴀɴsʟᴀᴜɢʜᴛᴇʀ.—The Court did not err in modifying the tenth instruction asked for by defendant.

Iᴅ.—Iᴅ.—Cʜᴀʀɢᴇ—Rᴇᴀᴅɪɴɢ Sᴇᴄᴛɪᴏɴs ᴏғ Cᴏᴅᴇ.—It was not error in the Court to read to the jury certain sections of the Penal Code of the State, applicable to the case, which were not reduced to writing or taken down by the short-hand reporter.

Iᴅ.—Pᴏsᴛᴘᴏɴᴇᴍᴇɴᴛ.—The defendant moved for a postponement on account of an absent witness, but the District Attorney admitted the fact expected to be proved, and there was no exception to the refusal of the Court to grant the motion. *Held:* The Court did not err in refusing to postpone the trial.

Iᴅ.—Cʜᴀʟʟᴇɴɢᴇ ᴛᴏ Jᴜʀʏᴍᴀɴ—Aᴄᴛᴜᴀʟ Bɪᴀs.—A challenge to a juryman, for actual and implied bias, was disallowed by the Court. *Held:* There was no error.

Iᴅ.—Iᴅ.—Iᴅ.—(McKᴇᴇ and Rᴏss, JJ.)—There was no error in disallowing the challenge taken to a juror who had formed a hypothetical opinion, from merely reading what purported to be a statement of the case in a newspaper. Such an opinion does not disqualify a juror, especially where, as in this case, it appeared from the testimony taken on the challenge, that the impression made on the mind of the juror was of such a character as to be removable by slight evidence.

Iᴅ.—Iᴅ.—Iᴅ.—(McKɪɴsᴛʀʏ, J.)—The juryman was challenged both for actual and implied bias. The Penal Code authorizes no exception to the ruling of the Superior Court, allowing or disallowing a challenge for'

actual bias. (Pen. C., § 1170.) No one of the *causes* stated in Section 1074, Penal Code, was alleged in the challenge for implied bias. The "having formed or expressed an unqualified opinion" does not constitute a ground of challenge for implied bias. (Pen. C., § 1074, amended April 9, 1880.)

ID.—JUDGMENT—PLACE OF EXECUTION—SURPLUSAGE.—The portion of the judgment which directs that defendant be taken to the "place of public execution," is surplusage. "The place of execution" is the place which the law determines; and if in addition to the judgment that defendant suffer death, the Court has said that he shall suffer death publicly, this is no part of the judgment.

APPEAL from a judgment of conviction and from a motion denying a new trial in the Superior Court of the County of Sonoma. PRESSLEY, J.

The following were the instructions asked by the defendant and refused by the Court:

" 1. I instruct you that the warrant of arrest under which the constable and *posse* were acting at the time of the shooting of Wright was void, and did not authorize said constable to arrest or attempt the arrest of defendant.

" 2. I instruct you that the complaint filed before the Justice of the Peace, and which has been introduced in evidence in this case, charges a misdemeanor, and that an officer has no right to arrest a party for a misdemeanor without a valid warrant, unless it was committed in the presence of such officer.

" 3. I instruct you that in the attempt to arrest the defendant, if such attempt was made, the said officers and *posse* were acting without authority of law; and if the killing was done by the defendant in resisting such attempted arrest, then you can not find him guilty of any crime above the grade of manslaughter.

" 4. I instruct you, in no event is an officer authorized to make use of guns or pistols in arresting a party for a misdemeanor."

The following is the 10th instruction referred to in the opinion:

" 10. If you believe from the evidence that the defendant Brown and those with him were encamped in the woods, and engaged in no unlawful acts when the constable and *posse* approached them, and that the constable and *posse* advanced with guns and weapons [and did not disclose their official character or purpose], and the defendant was ignorant of the

official character of the constable and the object of the *posse*, and mistaking the purpose of said constable and *posse* approaching, and being apprehensive and having reasonable grounds to believe that the constable and *posse* were advancing to kill or do him great bodily injury, then the defendant was authorized to act upon such reasonable apprehension and put himself upon the defensive, the defendant cannot be convicted of murder, even though Billings, one of the party, shot and killed the deceased."

This instruction was modified by striking out the words in brackets.

The Court in its charge read from the Penal Code, sections 187, 188, 189, 190, 192, 194, 971, and 972; and further instructed the jury as follows:

"If you believe from the testimony beyond a reasonable doubt, that Billings and Brown, the defendant, without lawful excuse, fired into a party of which the deceased was one, and when they so fired, they were acting in concert, and that a shot fired by Billings killed the deceased, the fact that Billings' shot killed the deceased would be no justification for Brown. In other words, if they (Brown and Billings) were acting in concert in the shooting, and the man whose shot actually took life, would under the circumstances be guilty of murder in any degree, all who were by design acting in concert in such shooting would be equally guilty.

"And further, gentlemen, I instruct you that if you believe from the evidence that the defendant Brown, and Carr, Gaunce, and Billings apprehended that they would be arrested by lawful authority, agreed to resist any lawful efforts made to arrest them, and in pursuance of such agreement, and while a constable and his *posse* were lawfully attempting to arrest them in a proper and lawful manner, any of the party with which the defendant Brown was acting thus in concert, killed a member of the *posse* under such circumstances that the slayer would be guilty of murder, then the defendant Brown would be equally guilty."

*J. T. Campbell* and *Barclay Henley*, for Appellant.

The Court erred in not postponing the trial (Pen. C., § 1052; *People* v. *Diaz*, 6 Cal. 248); in not allowing the chal-

lenge to the juror Spridgens (*People* v. *Johnston,* 46 id. 78; *People* v. *Brotherton,* 43 id. 530; *People* v. *Weil,* 40 id. 268); in admitting the warrant for misdemeanor (*In re Romaine,* 23 id. 585; *Miller* v. *Foley,* 28 Barb. 630; *People* v. *Poole,* 27 Cal. 572; 1 Bishop's Crim. Proc. 645, 655; Crocker on Sheriffs, 37, 38; 1 Bishop's Crim. L. 527, 528; Cases on Self-defense, Horrigan & Thompson, 717, 719, 700, 143; *Commonwealth* v. *Drew,* 4 Mass. 391); in admitting testimony as to a conspiracy (1 Russell on Crimes, 541, 442; 1 Bishop's Crim. L. 348; *People* v. *Anthony,* 56 Cal. 397); in refusing to admit competent testimony in its charge (*People* v. *Levison,* 16 Cal. 98; *People* v. *Murphy,* 47 id. 103); in not having its oral instructions taken down by the Reporter (Pen. C., § 1093; *People* v. *Hersey,* 53 Cal. 574); and in directing that the execution shall be public. (Pen. C., § 1229.)

*A. L. Hart,* Attorney General, for Respondent.

The law of homicide, in cases where an officer is killed by one resisting arrest, is very fully commented on in *People* v. *Rafferty* (69 Ill. 111; S. C., 18 Am. Rep. 601); in that case, an officer was attempting to make an arrest upon a void warrant. The killing was done by the defendant in this case, while he and his party were lying in wait, and for the purpose of preventing their arrest.

McKEE, J.:

The defendant, jointly with Carr, Gaunce, Billings, and Wheeler, was indicted for the murder of William Wright, in Mendocino County, on October 15, 1879, and was, upon a separate trial, convicted of murder of the first degree, and sentenced to be hanged. From the judgment he has appealed, and it is contended in his behalf that his conviction was illegal: 1. Because the Court, on the trial of the case, erred in admitting in evidence against him a warrant of arrest, which purported to have been issued against all the defendants by fictitious names, but which, on its face, was illegal and void; 2. In admitting in evidence the testimony of defendant Carr, an accomplice, who had been allowed to turn State's evidence, to prove a conspiracy between the defendants to commit crimes against the people of Mendocino

County; 3. In admitting in evidence the acts and declarations of some of the alleged conspirators; 4. In refusing and giving certain instructions to the jury upon the subject; and, 5. In certain errors of the law committed at the trial.

1. The evidence is claimed to have been inadmissible, and the instructions given improper, upon the grounds that the one was irrelevant and immaterial, and the other erroneous, because it appeared that the deceased was killed while engaged in an unlawful attempt to arrest the defendants, under the illegal warrant of arrest, and not in pursuance of any conspiracy.

But, assuming it to be true that the deceased was killed under such circumstances, there was no error committed in admitting in evidence the warrant of arrest. No objection had been made to the complaint upon which the warrant was issued, and the warrant itself was, in connection therewith, admissible as part of the circumstances in connection with the other circumstances, attending the killing, and as tending to reduce the crime of which the defendant was accused, to manslaughter. Where persons have authority to arrest, and are resisted and killed in the proper exercise of such authority, the homicide is murder in all who take part in such resistance. But, if the process be defective in the frame of it, as if there was mistake in the name of the person on whom it is executed, or if the name of such person, or of the officer, be inserted without authority, or after the issuing of the process, or if the officer exceed his authority, the killing of the officer in such case by the party would be manslaughter only. (2 Archb. Crim. L. 242; Roscoe's Crim. Ev. 698.)

2. But the record shows that the deceased was not killed in any attempt to arrest the defendants under the warrant which was issued. He had, it is true, accompanied the officer, to whom the warrant had been issued, with the intention of searching for the defendants to arrest them; and he was killed while making the search, by the defendants, who lay in ambush; but at the time of the killing, neither the deceased nor the officer whom he accompanied, knew of their presence, nor had committed any overt act towards arresting them. The defendants lay in ambush, and they were there not for any lawful purpose, but in pursuance of an agree-

ment which they had made to go into Mendocino County to commit larceny, burglary, and robbery, and particularly, to rob the Tax Collector of that county, and to resist by force any who might attempt to interfere with them or to capture them. All of them had been ex-State Prison convicts, and, in pursuance of their agreement, they met in Mendocino County, in the spring of 1879, armed with Winchester rifles, guns, and pistols, and supplied with ammunition, and opened their unlawful enterprise by stealing a steer, which they killed and converted into jerked beef for their use. In that act they were discovered by a Constable of the county, who made a complaint against them before a Magistrate of the county. The Magistrate issued a warrant against them by fictitious names; and upon receiving it, the Constable summoned a *posse comitatus* to assist him in arresting the defendants.

One of the *posse* was the deceased, Wright, who accompanied the officer in search of the defendants. In their search the *posse* came to the place of an abandoned camp about four miles to the north of Mendocino City, where, having discovered the remains of the steer half buried, and the tracks of human footsteps on the ground, and some pieces of dried beef here and there on the bushes, they followed them for about half a mile through the woods until they came to a densely wooded gulch, where they found an extinguished camp-fire, the ashes of which were still warm, but they neither saw nor heard any human being; but as the deceased, who was in front of the *posse*, stooped over to feel of the ashes, the defendants, who lay in ambush on the side of the gulch—some of them within the hollow of the half-burnt trunk of a redwood tree, through a hole in which they could fire upon persons below them, without themselves being observed, and others on either side of it, concealed by the shoots from the roots of the tree—fired a volley of some eighteen or twenty shots upon the *posse*, killing the deceased and one other of the party. There was testimony which tended to show that the defendant fired the shot which killed the deceased, and other testimony which tended to show that the shot was fired by Billings, another of the defendants. But both were present in ambush, and so far as the question of the guilt or inno-

cence of the defendant is concerned, it is of no particular moment whether the shot which killed the deceased was fired by the defendant or by Billings, or by any other of their confederates. Being in ambush, co-operating with each other for the purpose of executing or attempting to execute their unlawful enterprise, the defendant is guilty of the homicidal act, whether it was committed by his hands or the hands of any of his confederates. If it was an act born of their unlawful enterprise and part of it, and executed in pursuance of it, every one of them is equally guilty in law. Where men confederate together to commit crimes of a nature or under such circumstances as will, when tested by human experience, probably result in taking human life, if such necessity should arise to thwart them in the execution of their unlawful plans, it must be presumed that they all understand the consequences which might be reasonably expected to flow from carrying into effect their unlawful combination, and to have assented to the taking of human life if necessary to accomplish the objects of the conspiracy. (*Lamb* v. *The People*, 96 Ill. 82.) If, therefore, while armed and lying in ambush for the purpose of executing a common design, one conspirator commits murder, it is murder committed in furtherance of the common design, not only by him who commits the crime with his own hands, but in all who enter with or take part in the execution of the purpose for which they confederated together. (1 Russ. on Crimes, 24; 1 Bishop on Crim. L., c. 23, § 435; *Brennan* v. *The People*, 15 Ill. 516.)

3. And the acts and declarations of each, made while the conspiracy was pending, are competent evidence upon the trial of any one of them. The conspiracy being established, proof of the acts, admissions, and declarations of any one of the conspirators, in pursuance and furtherance of the criminal enterprise and in reference to it, is competent evidence against all. (Subd. 6, § 1870, C. C. P.; *Bloomer* v. *The State*, 48 Md. 521; *People* v. *Cotta*, 49 Cal. 166, 171; *People* v. *Geiger*, id. 643.) It follows, that there was no error in admitting in evidence testimony to establish a conspiracy between the defendants and to prove the acts and declarations of the conspirators pending the conspiracy.

4. Nor did the Court err in its instructions to the jury

upon that subject, or in refusing to give the instructions asked to be given by the defendant's counsel. For the deceased was not killed by the defendant in any attempt by him, as one of the *posse*, to arrest the defendants, with or without a warrant. Ignorant as the *posse* were of the presence or concealment of the defendants, no demonstration had been made against them by the officer or any one of the *posse*. The defendants had not been assailed, nor was their liberty invaded. They knew nothing of any hostile intent against them by those whom they observed from the ambush in the gulch below them. Nor did they know whether a warrant had been issued for their arrest. The officer had neither time nor opportunity to announce his office or his presence, or whether he came with peaceful or hostile intent. Under such circumstances, the killing of the deceased was wanton. It was not done in necessary self-defense, nor in resisting an attempt to arrest, or to prevent an unlawful arrest under an illegal or void warrant; but it was the logical consequence of their armed unlawful assemblage in pursuance of the conspiracy between them to commit crimes by force and violence, and for the prosecution of which they were there, armed and in ambush. The verdict of the jury is, therefore, not erroneous.

5. The expressions of the deceased at the time he was shot were admissible as a part of the *res gestœ*. (*State* v. *Porter*, 34 Iowa, 131; *Jackson* v. *State*, 52 Ala. 305.)

6. Voluntary confessions of guilt, made by a prisoner, are admissible in evidence against him; but confessions made by him at other times, of an entirely different character, are not admissible in his favor. In what a man says against himself he is presumed to speak the truth; but he is not allowed to make evidence for himself.

7. It was not error to refuse to postpone the trial of the case on account of an absent witness for the defendant; because the fact which the defendant alleged he expected to prove by the witness was admitted by the District Attorney; because the witness himself was produced at the trial, and because no exception was taken to the ruling of the Court in denying the motion.

8. It was not error in the Court to read to the jury, as

CAL. REPS. LIX—23

part of its instructions, certain sections of the Penal Code of the State, applicable to the case, which were not reduced to writing, or taken down by the short-hand reporter. (*The People* v. *Mortier,* 58 Cal. 262.)

9. Nor was error committed in disallowing the challenge taken to a juror who had formed a hypothetical opinion from merely reading what purported to be a statement of the case in a newspaper. Such an opinion does not disqualify a juror, especially where, as in this case, it appeared from the testimony taken on the challenge, that the impression made on the mind of the juror was of such a character as to be removable by slight evidence. (§ 1076, Penal Code; *People* v. *McCauley,* 1 Cal. 379; *People* v. *Reynolds,* 16 id. 128; *People* v. *Williams,* 17 id. 146; *People* v. *Symonds,* 22 id. 348.)

There is no error in the record prejudicial to the substantial rights of the defendant, and the judgment and orders of the Court below are affirmed, and the Court below is directed to fix a day for carrying the judgment into execution.

ROSS, J., concurring:

I concur, except in that part of the opinion which treats of the admission in evidence of the warrant of arrest. I agree, however, that the warrant was admissible.

McKINSTRY, J., concurring:

I concur in the judgment. The points urged by appellant are: 1. The Court erred in overruling the challenge of the juryman Spridgens. 2. Defendant's objections to the *warrant of arrest* should have been sustained. 3. The objections to the testimony of the witness Carr, so far as it tended to establish a conspiracy between defendant and others, for the purpose of " robbing the Tax Collector," or for any purpose other than killing deceased, should have been sustained. 4. The statements of deceased, made about the time he was shot, ought not to have gone to the jury. 5. The Court erred in sustaining the objection of the prosecution to proof of the statements made by defendant to the witness Nelson. 6. The Court erred in modifying the tenth instruction asked by defendant. 7. The judgment is erroneous under

section 1229 of the Penal Code. 8. The Court erred in read-ing certain sections of the Penal Code as part of its charge. 9. The Court erred in refusing to postpone the trial.

1. The juryman was challenged both for actual and im-plied bias. The Penal Code authorizes no exception to the ruling of the Superior Court, allowing or disallowing a chal-lenge for actual bias. (Penal Code, § 1170.) No one of the *causes* stated in Section 1,074 of the Penal Code, was alleged in the challenge for implied bias. The "having formed or expressed an unqualified opinion," does not constitute a ground of challenge for implied bias. (Penal Code, § 1074, amended April 9, 1880.)

2. The specific objections to the warrant were: "It don't show that any crime had been committed by the defendants therein named, of which the Justice of the Peace who issued it had jurisdiction to try or examine; that the real names of the persons therein stated are not stated, and there is no de-scription by which the officer could be enabled to identify the parties; nothing in the complaint by which the parties themselves are advised as to whether or not they are the per-sons that are accused of the crime; that there is no designa-tion of any offense known to the statute, except the general designation that the crime of 'malicious mischief' has been committed; it does not appear what the act constituting the malicious mischief consisted of—what the parties had done, where they did it, and how they did it."

The warrant is, almost *verbatim*, in the form set forth in Section 814 of the Penal Code. It recites that by complaint the defendants had been charged with the crime of "malicious mischief;" the statute does not require a specific statement in the warrant of the particular facts constituting the offense. It recites that the real names of the parties charged are un-known, and the Code does not require that they shall be otherwise described. (Pen. C., § 815.) No objection was made to the warrant on the ground that the signature of the Justice, or his official character, was not proved.

3. It is obvious that if the conspiracy included the design to kill any person who should attempt to arrest the parties to it—and there was evidence tending to show its consumma-tion by the killing of deceased—evidence of the whole scope

of the conspiracy was admissible. The agreement to enter into a joint scheme to do felonious and unlawful acts must be treated as an entirety. The testimony of the witness tended to show that all were parties to the whole of the unlawful combination, and I know of no rule by which any portion of the single agreement should have been excluded. There was evidence to show that, as part of the common design, the parties to the conspiracy agreed that they would slay any one who should attempt to arrest them. Carr testified: "Brown (defendant), Gaunce, Billings, and myself, all said we would not be taken alive—that we would resist arrest. In case they attempted to arrest us, we would use our arms on anybody that attacked us. That we wouldn't be taken—no difference how many attempted to arrest us, we wouldn't be taken." There was evidence tending to show that the conspirators awaited an attempted arrest at the point where the killing was done; tending to prove they anticipated an attempted arrest by those whose advent they awaited, and the circumstances of the killing tended to establish a common design in the act of killing itself—that the killing was the consummation of the purpose to resist by the use of arms.

Evidence of all the purposes for which the confederacy was formed was admissible, because there was evidence tending to prove that one of the purposes was to kill in case of any attempt to arrest, and that this purpose was carried out by the joint acts of the confederates.

4. The exclamations of deceased at the time he was shot, "Oh, God! Oh, my God!" were clearly admissible as part of the *res gestœ*.

5. The prosecution proved by the witness Morrow (without objection, and with the express consent of defendant), a conversation which occurred between the witness and defendant, in the presence of one Nelson. The Court properly sustained the objection on the part of the prosecution to an offer to prove another, distinct, and separate conversation between the defendant and witness Nelson.

6. The portion of the tenth instruction offered by defendant, which the Court refused to give, was properly stricken out, for the reason there was no evidence that the officer knew

of the presence of the defendant and his party until the *posse* was fired upon from the ambuscade; no evidence that the officer had occasion, or an opportunity, to make himself known as such.

7. The portion of the judgment which directs that defendant be taken to the "place of *public* execution" is surplusage. The judgment provides that defendant shall suffer death by hanging. (Penal Code, § 190.) Sections 1228 and 1229 direct how the judgment shall be executed. The law requires that a warrant signed by the Judge and attested by the clerk, stating the conviction and judgment, and appointing the day on which the judgment is to be executed, etc., shall be delivered to the Sheriff. The warrant is the officer's authority, and so far as it recites a legal judgment, is his protection. "The place of execution" is the place which the law determines; and if, in addition to the judgment that defendant suffer death, the Court has said that he shall suffer death publicly, this is no part of the judgment.

8. The Court did not err in reading from the Penal Code. (*People* v. *Mortier*, 58 Cal. 262.)

9. The Court did not abuse its discretion in refusing an indefinite postponement.