[Crim. No. 1802.   Fourth Dist.   Feb. 15, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. MILTON SWAIN, Defendant and Appellant.

Langford, Langford & Riley for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Norman G. Taylor, Deputy Attorney General, for Plaintiff and Respondent.

SHEPARD, J.—Defendant appeals from a judgment of conviction of wilful and malicious burning of a motor vehicle (violation of Pen. Code, § 449a) and of presenting a false insurance claim (violation of Ins. Code, § 556), and from an order denying his motion for a new trial. The cause was tried before the court without a jury.

FACTS

The essential facts revealed by the record are as follows: At or shortly after 11 a. m. September 30, 1960, a clear, sunny day, on Jamacha Road near its junction with United States Highway 94, in a barren, rocky area of San Diego County, defendant parked his 1958 Chevrolet 10-wheel dump truck off the road and it burned.

A truck driver named Liston passed by and saw the defendant on the running board in the act of coming away from the truck. A ball or flash of explosive fire was then coming out of the interior of the cab. The hood of the engine was down and no flame or smoke was seen coming out of it, nor from the ground underneath it. Defendant had nothing in his hands. Liston stopped, offered assistance and was told by the defendant to call the fire department. Liston drove about three quarters of a mile to a telephone and called the fire department. When the fire department arrived a few minutes later the entire front portion of the truck, including the engine compartment and the ground directly underneath the engine, was afire, sending up a large column of black smoke. The engine hood was still down. A one- or two-gallon gasoline can and two one-quart oil cans were seen about 15 feet ahead of the truck on the right side. Flames were coming from around the gas tank behind the driver's seat and from the floor of the cab. After the fire was out, while the tow truck was preparing to take defendant's truck away, defendant was seen to pick up the gasoline can and empty it by turning it upside down and shaking it. The witness estimated that not

more than one quart of gasoline was in the can at the time it was emptied.

Captain Juel Nelson, an expert with 20 years' experience as fire marshal and extensive experience in studying and investigating the causes of fires, testified at length regarding his analysis of the cause of the fire in the truck. From his testimony it appeared that some kind of combustible fluid must have been present on the cushions of the driver's seat and the floor of the driver's compartment to produce the intensity of heat shown to have been present; that the amount of heat produced could not be accounted for by the combustible materials available in the cab construction; that the burn pattern clearly indicated a flow of combustible material out from under the cab door and onto the running board of the truck; that the fan belt and radiator hoses were burned away; that the carburetor, radiator top and anchors were melted; that the distributor cap crumbled to the touch; that dirt was distributed evenly over the entire top of the engine to the depth of 3 or 4 inches; that this dirt was uniformly saturated with gasoline throughout its depth; that the amount of gasoline in the dirt was far in excess of what might be accounted for by throwing dirt on the motor after the motor had been splashed with gasoline; that the amount of heat evidenced in the engine compartment was far greater than could have been accounted for by throwing even a full quart of gasoline on the motor and igniting it; that the evidence revealed to him that the dirt must have been placed on the motor and the gasoline then poured on the dirt in order to obtain the saturation noted; that the fuel lines and gas tanks were carefully examined for ruptures or leaks and no evidence thereof was found; that 5 or 6 inches of gasoline remained in each of the fuel tanks; that the tanks were lower than the carburetor so that gasoline could arrive at the carburetor only by fuel pump operation; that the fuel pump operated only while the engine was turning over; that an extremely hot fire had been burning directly under the engine as well as in the engine compartment; that there was no focal point of fire underneath the point where the flexible joint of the fuel line was eventually burned in two; and that the condition of the paint on various portions of the hood showed that it was down during the fire. Other evidence shows there was no fire from the ground underneath the gasoline tanks nor leakage of the tanks.

Rasco, the truck driver witness called by defendant, stated he passed while defendant was parked, sometime within one

hour before noon, that the truck hood was up, with thin smoke rising from the engine compartment as if the engine was very hot, but the smoke was insufficient to detect in his rear view mirror as he passed. That when he passed defendant was standing by the right side of the engine compartment doing nothing; that some 300 yards after passing, the witness again picked up defendant in his rear view mirror and defendant was moving with some unidentifiable object in his hand.

Archie F. Shannon, called as an expert witness for defendant, stated as his ultimate opinion that the fire started in the engine compartment and spread to the cab. He offered no explanation as to why the flame appeared in the cab with a ball or flash of explosive flame at a time when there was no evidence of fire in the engine compartment.

Defendant testified that on approaching the spot where he parked, the engine sputtered and died; that he tried to switch the valve on the fuel tank to the other tank, thinking the first tank was empty, but was too late; that he then stepped on the starter after parking, and obtained no response; that he then took a one-gallon gas can, lifted the hood, took off the air filter, poured gasoline into the carburetor, spilled some on the engine, put the air filter on the fender, put the gasoline can on the ground, entered the cab and tried to start the motor; that a backfire occurred and the gasoline on the motor ignited; that he then jumped to the ground and threw dirt on the motor; that this was ineffective; that the rubber wiring caught fire and the fire crept into the cab; that he noted the smoke from the cab, went around and opened the cab door, saw the wiring and floor mats inside the cab on fire, threw dirt on them ineffectively, took the two cans of oil for the power steering out of the cab and placed them on the ground with the gasoline can and air filter, about 15 feet away toward the front of the truck. On cross-examination, defendant said he did not see the wires on fire. He denied he was on the driver's side of the truck when Liston came by. He denied the hood was down. He denied he knew at that time that he had insurance on the truck. No explanation is attempted as to how the floor mats could have caught fire so quickly from fire creeping along wiring. The trial court's disbelief of this testimony was not unreasonable.

Other witnesses testified that many parts of the truck were badly worn and that it was generally in poor condition; that defendant had many outstanding unpaid debts and that some of his payments on the truck purchase contract were delin-

quent; that the original policy of insurance was mailed to the defendant at the time it was issued, some months previous to the fire (defendant denied he ever received the policy); that in a written statement to an insurance adjuster defendant admitted that at the time of the fire he knew he was insured.

### PROOF OF OTHER ACCIDENTAL FIRE

Defendant first contends that the trial court committed prejudicial error in refusing to receive the testimony of another truck driver that said truck driver had had an accidental fire in his own truck. The only facts called to the attention of the court in this offer of testimony was that the witness had had his own truck burned. There was a statement from counsel in the offer that Captain Nelson had testified that it was impossible for a fire to be transmitted from the engine compartment to the driver's cab, but the record shows that the trial court was correct in saying that Captain Nelson did not so testify. ▮ In any event, counsel made no attempt to give any detailed description of what he expected the witness to testify to nor to show that the fire he wished the witness to testify to happened under identical or even similar circumstances to that in the case at bar. In the form the offer was made it was obviously immaterial. Nothing in the offer showed any conflict with Captain Nelson's testimony.

▮ It is, of course, true that only in that class of case where the subject matter of the testimony is solely within the knowledge of the expert does the uncontradicted testimony of the expert become conclusive. (*Arais* v. *Kalensnikoff*, 10 Cal.2d 428, 432 [74 P.2d 1043, 115 A.L.R. 163]; *Rolland* v. *Porterfield*, 183 Cal. 466, 469 [2] [191 P. 193]; *Treadwell* v. *Nickel*, 194 Cal. 243, 263 [15] [228 P. 25]; *Helbing* v. *Helbing*, 89 Cal.App.2d 224, 228 [3] [200 P.2d 560]; *Cloud* v. *Market Street Ry. Co.*, 74 Cal.App.2d 92, 97 [5] [168 P.2d 191].)

Even at first approach it becomes immediately obvious that the admission of this type of evidence presents problems of serious potential distraction and confusion because the material attempted to be injected is itself entirely disconnected with the case at bar and might easily become involved with trips into sidelines and byroads leading the legal traveller far afield from the main highway of the case. (*People* v. *Woon Tuck Wo*, 120 Cal. 294, 297 [52 P. 833]; *People* v. *Ely*, 203 Cal. 628, 632 [4] [265 P. 818].) Defendant has cited no cases in which the factual matters related by the layman were of

disconnected collateral facts. ▮▮▮ However, even though we assume that in proper case, reason and justice would dictate the admission of evidence of this type under some rule similar to or a part of the experimental rule which is recognized in California, it nevertheless would be the duty of the party offering such evidence to show that the facts to be presented were sufficiently similar to those in the case at bar as to have reasonable evidentiary value. ▮▮▮ As was said in *McGough* v. *Hendrickson,* 58 Cal.App.2d 60, 68 [136 P.2d 110], ''Before such evidence is admissible it is incumbent on the one offering the evidence to show the facts surrounding the experiment, and to show that the circumstances were substantially similar with those existing at the time of the accident.'' See also *People* v. *Ely, supra; People* v. *King,* 104 Cal. App.2d 298, 305-307 [3] [231 P.2d 156] ; *People* v. *Skinner,* 123 Cal.App.2d 741, 750 [6] [267 P.2d 875] ; *People* v. *Jones,* 177 Cal.App.2d 420, 425 [8] [2 Cal.Rptr. 305].

In the case at bar, counsel predicated his offer on his assertion that Captain Nelson had testified that transmission of fire from the engine compartment to the cab was impossible. As was remarked by the trial judge, the record does not show that Captain Nelson so testified. In substance, his testimony was that such transmission would not take place easily and would probably involve a substantial time lapse. Defense counsel apparently recognized from the statement of the court that the court misunderstood the purpose of the offer, but even after recognizing that he had not made his purpose clear to the court there still was no attempt at elucidation or recitation of facts to show identity or similarity of circumstances. This duty rested on the defendant, who was offering the evidence. (*People* v. *Jones, supra.*) Regarding this type of evidence, carrying with it as it does the danger of digression from the main path of the case, the trial court is also called upon to exercise some judgment and discretion as to whether there is sufficient probative value to warrant the receipt of the evidence. ▮▮▮ Its exercise of discretion will not be disturbed in the absence of abuse. (*People* v. *Ely, supra,* p. 633; *People* v. *King, supra,* p. 307; *People* v. *Skinner, supra,* p. 751.) We are unable to find merit in this contention.

### SELF-SERVING DECLARATIONS

Next, defendant contends that the trial court was guilty of prejudicial error in refusing to permit defendant's wife to testify that the defendant, some hours or so after the fire

occurred, telephoned her and stated to her that he did not know whether he had any insurance and asked her to call the finance company to find out about it. This, of course, was offered for the purpose of rebutting motive by bolstering defendant's testimony that at the time the fire occurred he did not know that he had insurance. Defendant cites *Estate of Carson,* 184 Cal. 437, 445 [194 P. 5, 17 A.L.R. 239]; *Kelly* v. *Bank of America,* 112 Cal.App.2d 388, 394 [246 P.2d 92, 34 A.L.R.2d 578]; *People* v. *Hewlett,* 108 Cal.App.2d 358, 377-378 [239 P.2d 150]; *Pailhe* v. *Pailhe,* 113 Cal.App.2d 53, 63 [247 P.2d 838]; *Estate of Doran,* 138 Cal.App.2d 541, 553 [292 P.2d 655]; *People* v. *Teitelbaum,* 163 Cal.App.2d 184, 215 [329 P.2d 157]; and *Mueller* v. *Marshall,* 166 Cal. App.2d 367, 370 [333 P.2d 260], in support of his contention that such statement to his wife was admissible in evidence. Citations contained in those cases lead also to *Whitlow* v. *Durst,* 20 Cal.2d 523 [127 P.2d 530]; *People* v. *Alcalde,* 24 Cal.2d 177 [148 P.2d 627]; *People* v. *Weatherford,* 27 Cal. 2d 401, 421 [164 P.2d 753]; *People* v. *Chenault,* 74 Cal.App. 2d 487 [169 P.2d 29]; *Sandoval* v. *Southern Cal. Enterprises, Inc.,* 98 Cal.App.2d 240 [219 P.2d 928]; *People* v. *One 1948 Chevrolet Conv. Coupe,* 45 Cal.2d 613, 620 [11a] [290 P.2d 538, 55 A.L.R.2d 1272]; *People* v. *Silver,* 16 Cal.2d 714, 723 [9] [108 P.2d 4], and *People* v. *Fong Sing,* 38 Cal. App. 253, 258 [175 P. 911]. A review of these cases reveals that all were based on some different facet of exceptions to the hearsay rule and all contain different fundamental elements. The *Carson, Whitlow, Doran, Pailhe, Kelly* and *Hewlett* cases involved statements of a decedent regarding intent in delivery of deeds or gifts, reconciliation with spouse, or legality of decedent's marriage. *Weatherford, Chenault, Fong Sing* and *Alcalde* all related to the declarant's statement of intention to go somewhere in the future; *Teitelbaum* related to statements made by defendant *during* the presentation of an alleged false insurance claim; the *Chevrolet* case related to prior statements against interest by the owner showing knowledge of the presence of a narcotic; *Sandoval* related to statements of plaintiff to rebut plaintiff's claim of loss of memory; *Silver* related to statements prior to act bearing on defendant's knowledge of duties. It will be noted that these cases group themselves under logical applications of this type of exception to the hearsay rule; i.e., those involving declarations of a potential witness whose lips have been sealed by death, forcing the receipt of an inferior type of evidence,

statements of future intention and admissions against interest.

On the other hand, the following cases flatly and unequivocally reject the receipt of self-serving declarations of the defendant without attempting to distinguish the difference between statements of fact and statements of intent: *People* v. *Brown,* 59 Cal. 345, 353; *People* v. *Kalkman,* 72 Cal. 212, 215 [13 P. 500]; *People* v. *Dice,* 120 Cal. 189, 201 [52 P. 477]; *People* v. *Chin Hane,* 108 Cal. 597, 604 [41 P. 697]; *People* v. *Dowell,* 204 Cal. 109, 115, 116 [266 P. 807]; *People* v. *Perkins,* 8 Cal.2d 502, 513 [7] [66 P.2d 631]; *People* v. *Smith,* 15 Cal.2d 640, 648 [5] [104 P.2d 510]; *People* v. *Huntington,* 8 Cal.App. 612, 621 [4] [97 P. 760]; *People* v. *Dad,* 51 Cal.App. 182, 187 [3] [196 P. 506]; *People* v. *Heape,* 72 Cal.App. 226, 232 [2] [237 P. 66]; *People* v. *Blanchard,* 71 Cal.App. 402, 408 [10] [235 P. 467]; *People* v. *McAfee,* 82 Cal.App. 389, 402 [9] [255 P. 839]; *People* v. *Alexander,* 41 Cal.App.2d 275, 281 [6] [106 P.2d 450, 916].

■ In *People* v. *Brown, supra,* the court tersely states the rule, "In what a man says against himself he is presumed to speak the truth; but he is not allowed to make evidence for himself."

In *People* v. *Hamilton,* 55 Cal.2d 881, 893-897 [13 Cal.Rptr. 649, 362 P.2d 473], the court, in holding inadmissible certain statements of a deceased victim, reviews the problem at length and comments, *inter alia,*

"Undoubtedly, in a proper case, and in a proper manner, testimony as to the 'state of mind' of the declarant, where there is an issue in the case is admissible, but *only when such testimony refers* to threats as to *future conduct* on the part of the accused, where such declarations are shown to have been made under circumstances indicating that they are reasonably trustworthy, and when they show primarily the then state of mind of the declarant and not the state of mind of the accused. But there are and should be rigid limitations on the admission of such testimony. One of these limitations is that such testimony is *not admissible if it refers solely* to alleged past conduct on the part of the accused. This is so because to try and separate state of mind from the truth of the charges is an almost impossible task.

"     .     .     .     .     .     .     .     .     .     .     .     .

"In such cases the authorities are agreed that it is impossible for the jury to separate the state of mind of the declarant from the truth of the facts contained in the declarations, and that for such reasons such declarations are inadmissible.

The late Professor McBaine correctly declared the rule when he stated: 'If declarations of belief or memory should be received to prove a past act, there would be not much left of the Hearsay rule, and generally the courts hold that such declarations are inadmissible hearsay.'

". . . . . . . . . . .

"Justice Cardozo . . . stated . . .: 'Declarations of intention, casting light upon the future, have been sharply distinguished from declarations of memory, pointing backwards to the past. There would be an end, or nearly that, to the rule against hearsay if the distinction were ignored.' " (Italics ours.)

In applying the foregoing to the case at bar we must keep in mind that the purported statement of the defendant was not directed at the future false claim but rather at the past fact of his memory at the time the alleged criminally-set fire occurred. It was not part of the res gestae; it was not a statement of future intent; it was a statement relating to the accused's past memory of a past fact in connection with an alleged criminal act already committed. The court's ruling was correct.

Furthermore, the defendant himself, in his own testimony, was allowed to recount in full the questioned conversation and the connotations of the wife's testimony clearly conveyed the same information to the court. The wife's testimony, under these circumstances, was purely cumulative and in any event all the material involved actually came to the court. Even if the ruling had been incorrect, we would be unable to find prejudice.

The judgment and order denying motion for new trial are affirmed.

Griffin, P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied March 15, 1962, and appellant's petition for a hearing by the Supreme Court was denied April 11, 1962.