(Decided 27th January, 1881.)

EDWARD F. JOHNS *vs.* THE STATE OF MARYLAND.
SAME *vs.* SAME.

*Practice in Criminal Cases—Rule 1, of the Court of Appeals— Appeal under the Act of 1872, ch. 316—Finding of Facts under an Issue raised on a Plea in Abatement—A Plea in Abatement without Affidavit, a Nullity—Making up the Panel—Admissibility of Evidence—Act of 1872, ch. 329, relating to Defaulters—Art. 21, of the Declaration of Rights— Challenge of Juror—Objection to the Panel as made up.*

Where there was a demurrer to an indictment which was overruled, and after verdict of guilty, a motion in arrest of judgment, also overruled, and the traverser appealed under the Act of 1872, ch. 316, there being no final judgment, those rulings cannot be reviewed

(not being brought into this Court as provided by Rule 1,) but only what is presented by the exceptions as allowed under the Act.

After the demurrer to an indictment had been overruled by the Court below, the traverser pleaded in abatement (not verified by affidavit,) that the grand jury by whom the indictment was found, had not been legally drawn, and was therefore not lawfully constituted, setting forth the particulars. The plea was traversed by the State, and the issue of fact tried before the Court. Evidence was offered in support of the averments, set out in an exception on an appeal by the traverser under the Act of 1872, ch. 316, but on the trial of that particular issue, no question appeared to be raised as to the admissibility of evidence or any distinct proposition of law made on which the Court was required to rule, there was no statement of facts in the record as having been found by the Court, but at the close of the evidence as set out in the exception, it is stated, the Court overruled the plea in abatement, and decided that the grand jury drawn from the box mentioned by a witness was legally constituted, and that the traverser should plead to the indictment. HELD :

1st. That it was not the function of this Court to review the evidence contained in the exception, and find the facts that may have been the basis of the rulings of the Court below, and that it could not therefore review the rulings, there being no special finding of the facts spread upon the record, either in the form of a special verdict, or a special finding by the Judge.

2nd. That the plea in abatement, being a mere nullity for want of affidavit, was properly overruled.

It is no ground of objection by a traverser that the persons drawn or summoned as jurors or talesmen were not called to the book in the order in which their names appear in the list, or the order in which they may have been drawn or summoned. It has been the uniform practice of the Courts of this State, to proceed to make up and swear the panel from such jurors or talesmen, as have been found attending the Court, without waiting for or directing process against others, who may have failed to attend, and whose names may have been first drawn, or who may have been first summoned.

At the trial of the traverser on an indictment as a defaulter to the State, under the Act of 1872, ch. 329, the State offered to prove by a former clerk to the Commissioners, an entry on a ledger or book that had been kept by him as such clerk, showing the amount of

State taxes that had been levied and placed in the hands of the traverser, as collector for 1878; and then proposed to ask the witness whether the taxes mentioned in the entry were placed in the hands of the traverser for collection, to this offer the traverser objected, and proved by the witness that he had made out and delivered to the traverser, as collector, a book containing items of the State taxes for that year, and that the delivery of the book was all that was done in the matter of placing the taxes, mentioned in the entry, in the hands of the traverser for collection; and further, that there was no special written order of the Commissioners, directing the placing of the taxes in the hands of the traverser. HELD:

That the objection was properly overruled, and that the evidence was admissible.

By the Act of 1872, ch. 329, relating to defaulters, the certificate of the comptroller of the State, attached to the statement of the account of a person indicted under that Act, showing the amount for which he was in default as collector of State taxes, is admissible as *prima facie* evidence in his prosecution for such defalcation; and the admissibility of such evidence does not contravene the Declaration of Rights, Art. 21, which is not to be understood as excluding all other evidence except oral evidence of witnesses produced in Court.

At the trial of the traverser on an indictment as a defaulter under the Act of 1872, ch. 329, in not paying over county taxes, in the course of empanelling the jury, a talesman was called to the book and sworn on his *voir dire*, and was asked whether he had formed or expressed an opinion, as to the guilt or innocence of the traverser; to which he replied, that he had not, that his sympathies were with the traverser, but his prejudices were against him; and he did not think himself an impartial juror. The traverser, without requesting the juror to be further interrogated, objected to his being sworn, but the objection was overruled, and the traverser then peremptorily challenged the juror. The empanelling of the jury then proceeded, and after the traverser had exhausted his twenty peremptory challenges, another talesman was called, who had been drawn in an earlier stage of the proceeding, but who did not appear to be sworn until after the traverser had exhausted his challenges. This latter talesman was sworn, against the objection of the traverser. It does not appear that the traverser offered to challenge this last juror sworn, or that he was in any manner objectionable to him as a juror, or that he would have challenged him

Johns vs. The State.

if his peremptory challenges had not been exhausted. The objection made was not to the particular juror, but, as stated in the exception, to the panel as made up; and the Court below having overruled the objection, the traverser excepted. HELD:

That the objection was properly overruled.

APPEALS from the Circuit Court for Harford County.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., ALVEY, ROBINSON and IRVING, J.

*Henry W. Archer*, for the appellant.

*Charles J. M. Gwinn, Attorney-General*, for the appellee.

ALVEY, J., delivered the opinion of the Court.

This case is brought into this Court by appeal, under the Act of 1872, ch. 316, allowing bills of exceptions and appeals to be taken in criminal cases.

The traverser was indicted as a defaulter to the State, under the Act of 1872, ch. 329. There was a demurrer to the indictment, which was overruled, and after verdict of guilty, there was a motion in arrest of judgment entered, which was also overruled; but as there has been no final judgment upon the verdict, those rulings are not brought up for review by the appeal allowed under the statute, and can only be brought here after final judgment, as provided in Rule 1, for the regulation of appeals and writs of error. 29 *Md.*, 1. There is therefore no question presented on this appeal, except such as may be found to be properly presented by bills of exception.

1. After the demurrer to the indictment had been overruled by the Court, the traverser pleaded in abatement, that the grand jury, by whom the indictment was found,

23                    v. 55.

had not been legally drawn, and was not, therefore, a lawfully constituted grand jury. The plea sets forth the particulars in which it is supposed there was a failure to conform to the directions of the statute in drawing the jury. It does not appear that the truth of the matters alleged was verified by affidavit. The plea was traversed by the State; and the issue of fact thus formed was tried before the Court instead of a jury. Evidence was offered in support of the averments of the plea, and which is set out in the first bill of exception; but, upon the trial of that particular issue, there does not appear to have been raised any question as to the admissibility of evidence, or any distinct proposition of law made, upon which the Court was required to rule. There is no statement of facts as having been found by the Court; but at the close of the evidence, as set out in the bill of exception, it is simply stated that the Court *overruled the plea in abatement,* and decided that the grand jury, drawn from the box mentioned by a particular witness, had been legally constituted, and that the traverser should plead to the indictment. It is manifest, therefore, if the ruling of the Court, as stated in this exception, is to be reviewed by this Court, it would be first necessary that we should review the evidence, and ascertain what facts are properly deducible therefrom, before we could proceed to determine the question of the correctness or incorrectness of the ruling of the Court, upon the whole evidence before it. But it is no part of the function of this Court, in a case like the present, to review evidence and find the facts that may have been the basis of the rulings of the Court below.

It was at the option of the traverser to try the issue of fact raised upon his plea either before the Court or by a jury. When an issue is joined upon a plea in abatement or replication thereto, the issue may be tried by a jury without delay (2 *Leach,* 478; *Chitty Cr. L.,* 450, 451; 1 *Whart. Cr. L.,* sec. 537; *Rex vs. Gibson,* 8 *East,* 107);

and if the issue had been tried before a jury, clearly this Court would have nothing to do with the finding of facts. But whether it be tried before the Court or jury, unless there be a special finding of the facts, spread upon the record, either in the form of a special verdict or a special finding by the Judge, this Court, not being able or authorized to make any conclusion in regard to the question of fact, cannot, therefore, determine whether the general finding or conclusion upon the whole case, be justified or not. When the facts are found and spread upon the record, it then becomes the duty of this Court to see that the Court below has correctly applied the law to the facts thus found. As was said by the Court in the case of *Ford*, 12 *Md.*, 547, " Whilst the Court of review cannot find the facts, yet, when the facts are found by the Court or the jury below, as the case may be, it is but its proper and legitimate province to see that the inferior Court has pronounced correctly the law as applicable to the facts." It was upon this principle that the case of *Clare*, 30 *Md.*, 164, was decided. In that case, some of the pleas in abatement had been demurred to by the State, and others had been traversed, and all the questions raised by the pleas in abatement, as well those of fact as those of law, were tried before the Court, in whose judgment the facts were specially found and set forth, and the case was brought to this Court on writ of error, which presented the whole record for review. The facts were found by the Court below, not by this Court; and it was only because the facts were so found, that this Court was enabled to review the law that had been applied to those facts.

But, according to the statement of the bill of exception, the Court *overruled* the plea in abatement; and in this the Court was well justified, irrespective of the testimony offered, for the plea, in the manner it was pleaded, was a mere nullity. As we have already stated, the plea was without affidavit; and the Stat. 4 Ann, c. 16, sec.

11, which has been construed to apply to criminal cases, (3 *Burr.*, 1617; 1 *Whart. Cr. L.*, sec. 536,) expressly provides, "that no dilatory plea *shall be received* in any Court of record, unless the party offering such plea do, by affidavit, prove the truth thereof," &c. This provision of the Statute of Ann is in force in this State, and must be complied with, or otherwise dilatory pleas may be rejected or treated as nullities. *Graham vs. Fahnestock*, 5 *Gill*, 215.

In 1 *Bac. Abr., p.* 34, *tit.* "*Abatement O*," it is said, "if a plea in abatement is not signed by counsel the plaintiff may sign judgment, for it is *no plea at all;* and so if no affidavit be annexed, or a defective affidavit."

It has been ruled in some cases, though the reverse in others, that if a plaintiff in a civil action replies to a plea in abatement without the affidavit, he thereby waives the defect; though in a criminal proceeding the rule is different, and no such effect is produced. *Graham vs. Ingleby*, 1 *Wels., Hurl. & Gord.*, 651, 655; *Reg. vs. Bloxham*, 6 *Q. B.*, 528. The general rule, doubtless, is, that while an irregularity may be waived, a mere nullity cannot be. *Taylor vs. Phillips*, 3 *East*, 155.

2. The second exception taken by the traverser presents the question, whether the State is bound to call and present to be sworn or challenged, all jurors or talesmen that may be drawn or ordered to be summoned, in the exact order in which they are drawn, or summoned by the sheriff? or, if some, or a sufficient number, of those last on the list, have been summoned, and actually appear, whether the Court may not proceed to make up the panel from those appearing, without waiting for those named earlier on the list, or those first summoned by the sheriff, if they should fail to appear for any cause?

We can entertain no doubt in regard to this question, and think that the ruling of the Court below, as set out in this exception, was clearly correct. So far as we know,

it has been the uniform practice of the Courts of this State, to proceed to make up and swear the panel from such jurors or talesmen as have been found attending the Court, without waiting for or directing process against others, who may have failed to attend, and whose names may have been first drawn, or who may have been first summoned. The accused has no special right in having any particular individual or individuals presented to be sworn as jurors, rather than others equally competent. All that he has a right to demand is, that the persons presented to be sworn as his triers, shall be good and lawful men, competent, under established rules of law, to be sworn in his case. The mere order of their being drawn or summoned cannot in any way affect their competency, nor can it deprive the accused of any right that he may have in the organization of the jury. Therefore, it is no ground of objection by the traverser, that the persons drawn or summoned as jurors or talesmen were not called to the book in the order in which their names appeared in the list, or the order in which they may have been drawn or summoned. The prevailing practice is founded in convenience, and often in the necessities of the case; and unless constrained by authority, we should not be willing to question or disturb that practice.

3. In the third exception it appears, that the State offered to prove by a former clerk to the County Commissioners, an entry on a ledger or book that had been kept by him as such clerk, showing the amount of State taxes that had been levied and placed in the hands of the traverser, as collector, for the year 1878; and then proposed to ask the witness whether the taxes mentioned in the entry were placed in the hands of the traverser for collection. To this offer, the traverser objected, and proved by the witness that he had made out and delivered to the traverser, as collector, a book, containing items of the State taxes for that year; and that the delivery of the book

was all that was done in the matter of placing the taxes, mentioned in the entry, in the hands of the traverser for collection; and further, that there was no special written order of the Commissioners, directing the placing the taxes in the hands of the traverser. The objection was overruled, and the evidence admitted; and we can perceive no possible objection to the ruling thus made.

From the statement in the bill of exception, it is uncertain whether the book containing the entry was produced, or whether it was only a copy of the entry from the book. But whether offered in the one form or the other, the mode of proof was unobjectionable. If the book was produced, containing the entries, it was clearly admissible, being a book of a public nature, and pertaining to a public office; and if a copy of the entries from such book were offered, such copy was admissible upon being verified by a witness who had made the transcript, or who had compared the copy with the original entries; and this is what we must understand the State as proposing to do. 1 *Greenl. Ev.*, secs. 484, 485. And as to the fact or act of placing the taxes in the hands of the traverser for collection, it was the duty of the clerk to the commissioners, made so by statute, to place in the hands of the traverser a fair copy of the assessment of taxes, or so much thereof as it was the duty of the traverser to collect; and there is no statute that required a formal or written order by the commissioners for the delivery of the copy of the assessment to the collector. After showing the amount of the levy or assessment, either by the production of the proper book, or copy of the entries therefrom, verified by proof, it was certainly competent to prove, by parol, the fact that the copy of the assessment had been delivered to the traverser as collector. It seems to have been done by making the entries in a book, which was delivered to and accepted by the traverser. If there were any discrepancies between the entry in the book in the office

of the County Commissioners and that made out and delivered to the traverser, he could easily have shown them by the production of his book, containing the entries of all the taxes placed in his hands for collection.

4. The fourth exception presents the question as to the admissibility and legal effect of the Comptroller's certificate, attached to the statement of the account of the traverser with the Treasury of the State, showing the amount for which the traverser was in default as collector of State taxes for the year 1878.

The Act of 1872, ch. 329, under which the traverser was indicted as a defaulter, provides that the certificate of the Comptroller of the State, or of the respective clerks of the County Commissioners, showing the accused to be a defaulter, shall, in every prosecution under the Act, be received as *prima facie* evidence of such defalcation.

It is contended by the traverser that neither the statement of the account, nor the Comptroller's certificate appended thereto, should have been received in evidence against him; that, by the Declaration of Rights of this State (Art. 21,) he was entitled to be confronted with the witnesses against him, the benefit of which he was denied by the admission of this evidence; and that it is not competent to the Legislature to make such evidence admissible in a criminal case; and, even if the Legislature could make such evidence admissible, it was incompetent to declare that such certificate should be received as *prima facie* evidence of defalcation.

If it were true that a party proceeded against by criminal accusation could be affected by no evidence except that related by a sworn witness in Court, and subject to the test of cross-examination, there would certainly be great force in the contention of the traverser. But we are aware of no principle in the law that imposes any such restriction upon criminal prosecutions. Written and documentary evidence is in daily use, in criminal as well

as in civil trials; and if such evidence be admissible at all to contribute to the conviction of guilt, it is difficult to suggest a reason why it may not be in itself sufficient upon which to found a *prima facie* conclusion of the guilt of the party accused.

In declaring that the party accused shall have the right to be confronted with the witnesses against him, that provision of the Declaration of Rights is not to be understood as excluding all other evidence except oral evidence of witnesses produced in Court.    Such has never been its interpretation, nor does the language warrant it.  It is only where the prosecution is to be maintained by the testimony of living witnesses that they are required to be produced in Court, confronted with the accused, and deliver their testimony under the sanction of an oath, and be subject to cross-examination.   In other words, no witness shall give his testimony in secret, or out of the presence of the accused ; and no party shall be put upon his trial upon mere hearsay evidence; but the witness shall be produced, and be subject to all the tests that the law has devised for the full disclosure of the truth.   In all this, however, there is nothing to exclude other evidence recognized and sanctioned by the law, as fit and appropriate means of establishing the truth of the charge against the accused.

In Article 6, of the Constitution of the United States, it is also declared that, in all criminal prosecutions, it shall be the right of the accused "to be confronted with the witnesses against him." And yet, as showing how that provision has been understood, we find that Congress, by the Act of 1846, ch. 90, sec. 16, provided that, upon the trial of any indictment against any person for embezzling public moneys, *it shall be sufficient evidence*, for the purpose of showing the balance sgainst such person, to produce a transcript from the books of the Treasury Department, as provided by the Act of 1797, ch. 20, making

such transcript sufficient evidence in civil actions against delinquent revenue officers, upon which to render judgment. *Rev. Sts., secs.* 886, 887 ; *Hoyt vs. U. S.,* 10 *How.,* 132 ; *U. S. vs. Gaussen,* 19 *Wall.,* 198.

In the case of *U. S. vs. Wood,* 14 *Pet.,* 430, the party was indicted for perjury, in perpetrating a fraud upon the revenue ; and the only evidence offered in proof of the falsity of the oath taken, as charged in the indictment ; that is to say, the intentional suppression of the true cost of the goods imported, with intention of defrauding the government, was certain documentary evidence, consisting of entries and invoices, and certain letters. This evidence was objected to on the part of the defence, as being incompetent proof upon which to convict for the crime of perjury ; and it was insisted, that the legal evidence required to convict of perjury, was the testimony of at least one living witness, to disprove the truth of the defendant's oath, as to the actual cost of the goods, at the time and place of exportation. But it was held by the Supreme Court, that it was not necessary, in order to a conviction, that the prosecution should produce a living witness to the *corpus delicti* of the defendant ; that documentary evidence was all-sufficient for the purpose. It was not even contended, in that case, that the constitutional provision, that the accused was entitled to be confronted with the witnesses against him, had any application whatever. The contention was, as to the legal mode and sufficiency of proof of the specific offence. If the doctrine contended for by the traverser in this case, had been deemed tenable, it would undoubtedly have been invoked in the case of Wood to which we have referred.

Then, as to the effect of the certificate as evidence under the statute. As we have seen, the statute declares, that the certificate shall be received as *prima facie* evidence of defalcation. This is no novel or extraordinary provision to be found in statutes prescribing rules of evidence for the government of Courts and juries.

In 1803, the Congress of the United States passed an Act, ch. 9, sec. 4, (*Rev. Sts., U. S., secs.* 4577, 4578,) requiring all masters of vessels, owned by citizens of the United States, when bound to any port thereof, to take on board destitute seamen, at the request of consuls, vice-consuls, etc., and their refusal is made a penal offence; and the statute provides that the certificate of any such consul or other officer mentioned, under his hand and official seal, shall be *presumptive evidence* of such refusal, in any Court of law having jurisdiction to enforce the penalty. In a proceeding under this statute, to recover the penalty incurred, in the case of *Matthews vs. Offley,* 3 *Sum.,* 115, 123, Judge STORY allowed to the certificate of a vice-consul, that the master had refused to take on board his vessel a destitute seaman, the fullest *prima facie* effect; and held that the certificate was not only *prima facie* evidence of the simple fact of *refusal,* but of all the facts stated in the enacting clause of the statute, which were necessary to bring the case within the penalty prescribed.

Indeed, there can be no question of the power of the Legislature to change the common law rules of evidence, or to prescribe new rules, altogether different from those known to the common law; and it may declare what proof shall be deemed or taken as *prima facie* sufficient to establish any particular fact, even in criminal cases. There are many illustrations and examples that could be furnished of this from our own statute book; and decided cases of high authority are abundant to sustain the competency of such legislation. In support of this proposition we may refer to the cases of *Comm. vs. Williams,* 6 *Gray,* 1; *Comm. vs. Rowe,* 14 *Id.,* 47; *Holmes vs. Hunt,* 122 *Mass.,* 505; *State vs. Henley,* 54 *Me.,* 562; *State vs. Cunningham,* 25 *Conn.,* 195, and *State vs. Wheeler, Id.,* 290, 300. So far as this case is concerned, it may readily be conceded, that a statute that should make evidence *con-*

*clusive,* which was not so of its own nature and inherent force, and by that means preclude the party from showing the truth, would be simply void. But the evidence furnished by the certificate only being *prima facie* in its effect, the traverser was left at full liberty to repel and overcome that *prima facie* effect, by evidence that ought to have been within his own control.

This Court is of opinion, therefore, that there was no error in the ruling of the Circuit Court, as set forth in the fourth exception.

We have thus disposed of the several rulings in the bills of exceptions found in the record in No. 26, special docket, being the case for default in not paying over State taxes; and in what we have said in regard to the rulings in that case, in the first and fourth exceptions, equally applies to, and completely disposes of, the several rulings set out in the first and third exceptions found in the record in case No. 27, special docket, against the same party; this latter case being for default in not paying over county taxes.

The only remaining question to be decided, is that presented in the second exception in the last case mentioned.

By this exception it appears, that, in the course of empanelling the jury, a talesman named Webster, was called to the book and sworn on his *voir dire,* and was asked whether he had formed or expressed an opinion, as to the guilt or innocence of the traverser; to which he replied, that he had not; that his sympathies were with the traverser, but his prejudices were against him; and he did not think himself an impartial juror. The traverser, without requesting the juror to be further interrogated, objected to his being sworn, but the objection was overruled, and the traverser then peremptorily challenged the juror. The empanelling of the jury then proceeded, and after the traverser had exhausted his twenty peremptory challenges, another talesman was called, who had been drawn in an earlier stage of the proceeding, but who did

not appear to be sworn until after the traverser had exhausted his challenges. This latter talesman was sworn, against the objection of the traverser. It does not appear that the traverser offered to challenge this last juror sworn, or that he was in any manner objectionable to him as a juror, or that he would have challenged him if his peremptory challenges had not been exhausted. The objection made was not to the particular juror, but, in the language of the exception, to the panel as made up; and the Court having overruled the objection, the traverser excepted.

There is nothing presented by this exception that would justify this Court in reversing the ruling of the Court below. In the first place, we are not prepared to say, that the talesman, Webster, was an incompetent juror. He had neither formed nor expressed any opinion in regard to the case; and his feelings towards the traverser would seem to have been balanced. It is true, he thought himself not an impartial juror, but that matter should have been more thoroughly probed, in view of what he had previously said in regard to the state of his mind. The party, however, was summarily discharged by the use of the peremptory challenge by the traverser, and no exception was then taken to the ruling of the Court. It was when the last juror was called to be sworn that an objection was raised to the completion of the panel, and after that juror was sworn, the objection was renewed to the panel as then completed; and to the overruling of that objection the exception was taken. It was not suggested that the traverser was in any manner prejudiced by the swearing of the last juror called. He neither offered to challenge that juror peremptorily nor for cause; and, as we have seen, the objection upon which the exception was taken, did not go to the individual juror, but to the entire panel as it was then constituted.

Johns Hopkins Univ., *et al. vs.* Pinckney.

We think the objection was properly overruled; and as we find nothing in any of the exceptions taken in either case, to constitute cause of reversal, we must affirm those rulings, and remand the cases to the Court below for judgments upon the verdicts rendered.

*Rulings affirmed, and
cases remanded.*

(Decided 27th January, 1881.)