[Crim. No. 2691.   First Dist., Div. Two.   May 18, 1951.]

THE PEOPLE, Respondent, v. ROSS KING et al.,
Appellants.

Magee, Shortridge & Werlhof and Bruce Atherton Werlhof for Appellants.

Edmund G. Brown, Attorney General, and David K. Lener, Deputy Attorney General, for Respondent.

SCHOTTKY, J. pro tem.—Defendants Ross King and Kenneth Pierce were found guilty upon two counts of an indictment charging them with abortion and conspiracy to commit abortion. Their motion for a new trial was denied and this appeal is from the judgment of conviction and from the order denying the motion for a new trial.

Defendants and appellants do not attack the sufficiency of the evidence to support the judgments of conviction, nor do they contend that the jury was not fully, fairly and correctly instructed. They base their argument for reversal upon a number of asserted prejudicial errors occurring at the trial.

In view of the fact that no attack is made on the ground of insufficiency, it is not necessary to state the evidence in any detail.

It is sufficient to say that a woman who was pregnant visited the place of business of defendants in San Francisco and, after an examination, she was told that it would be safe to perform an abortion. She described to the jury what was done, and the instruments used on two different visits to defendants' place. Shortly after the second operation certain alarming symptoms developed which sent her to a reputable doctor (in no way involved in the illegal operation) who hospitalized her and thereafter operated and she seems to have recovered from what was apparently a serious condition.

Appellants' first contention is that the court erred in

permitting Dr. Carr to answer the following hypothetical questions:

"Mr. Phelps: Q. I will ask another question, Doctor: Assuming the facts of the previous question—I am more used to being asked questions by doctors than asking of them — assuming the occurrences on Monday, the 24th, as I have asked you to assume and all the prior occurrences and facts as asked you to assume, what in your opinion, as a medical man, was being done by the person who was treating the woman on Monday—treating or working upon the woman on Monday evening, October 24, 1949?

"Mr. Hennessy: I object to that question as incompetent, irrelevant and immaterial, indefinite and uncertain, calling for an indefinite and uncertain answer, and an opinion.

"The Court: Overruled.

"The Witness: A. At that time material had been evacuated spontaneously far enough that the uterine contents were visible and part of them were undoubtedly in the vaginal canal. Those were seized by the hemostat, which is No. 12 in evidence, and by traction that material was being pulled out of the uterus. It is evident that was the case because this woman felt pain.

"Mr. Phelps: Q. In your opinion, on that occasion was an abortion being completed? A. That's right.

"Mr. Hennessy: That is a leading and suggestive question, your Honor. I move to strike it out.

"The Court: Overruled."

Appellants argue that "it is obvious that by these two questions the expert witness was directed by the prosecution questions to give an opinion on the ultimate, basic issue, and the law is clear that conclusions of this type are for the jury to make, and such testimony invades the province of the jury."

The questions complained of were based on prior hypothetical questions which assumed the introduction of the vaginal electrode through the cervix of a pregnant woman and that it was allowed to remain for two hours, which Dr. Carr testified could cause an abortion. It appears from the record that the only objection made to the previous questions was that some of them did not correctly state the evidence but no objection was made that they invaded the province of the jury. The questions complained of, and the answers thereto, added little if anything to the previous answers of Dr. Carr, so it is difficult to understand how appellants could have been harmed by them. Furthermore, we do not believe that appel-

lants made proper objections to the questions specifically complained of, as the objections should have been that the questions invaded the province of the jury and called for an opinion on an ultimate fact. It is only fair to state that appellants were not represented at the trial by the same counsel who represent them on this appeal.

Appellants cite section 74, page 1778 of Witkins Summary of California Law where it is said: "Opinions on Ultimate Issue. (a) The expert may give his opinion on any particular questions involved in a case, but that opinion cannot be accepted on the *ultimate, basic issue,* e.g., in a personal injury case, whether the defendant was negligent. It is said that conclusions of this type are for the *jury* to make, and the testimony invades the province of the jury. Thus, it is proper to ask a doctor whether a certain kind of operation or method is the *customary practice* of skilled physicians, but it is improper to ask whether such practice constitutes *due care* or *negligence.* (*Thomason* v. *Hethcock* (1935), 7 Cal.App.2d 634 [46 P.2d 832].) It is likewise improper to ask whether the *particular doctor defendant* exercised ordinary skill in treating the particular patient. (*Criss* v. *Angelus Hospital Assn.* (1936), 13 Cal.App.2d 412 [56 P.2d 1274].)" Appellants also quote from *People* v. *Crossan,* 87 Cal.App. 5, at page 16 [261 P. 531]:

"Witnesses were also permitted, over appellant's objection, to testify as experts that flying with a loose magneto, or with only one gallon of gasoline in the tank, was not safe. There was other evidence tending to prove the existence of both of these conditions on appellant's aeroplane at the time in question. This testimony invaded the province of the jury and should not have been admitted. No doubt expert witnesses should be allowed to testify as to the probable consequences of flying with a loose magneto or a small supply of gasoline, but testimony that such flying was not safe went beyond the scope of expert testimony and covered the ultimate fact which the jury were required to determine. (10 Cal.Jur. 1013, 1014.)"

Counsel for respondent concedes that there are authorities in California and elsewhere holding that questions to experts bearing on the ultimate facts for the jury have been held inadmissible as a general rule, but they argue that there are exceptions to this rule. They cite *People* v. *Wilson,* 25 Cal.2d 341 [153 P.2d 720], which was an abortion case, and in which

a doctor was permitted to testify that the abortion in question was not performed in order to save the woman's life. The Supreme Court in affirming the judgment of conviction said at page 348:

"The method of obtaining opinion evidence from an expert by hypothetical questions is unsatisfactory (citations), but it is at present the least objectionable known to the law. (Citation.) The trial court, however, should prevent the use of misleading or unfair hypothetical questions, permitting only questions that sufficiently specify the assumptions on which they are based and contain only such assumptions as do not contradict the weight of the evidence in the case. (Citations.) While each hypothesis contained in the question should have some evidence to support it, it is not necessary that the question include a statement of all the evidence in the case. The statement may assume facts within the limits of the evidence, not unfairly assembled, upon which the opinion of the expert is required, and considerable latitude must be allowed in the choice of facts as to the basis upon which to frame a hypothetical question. (Citations.) All facts assumed in prosecuting counsel's questions in the present case were sustained by the evidence except the assumed fact that the abortion was performed for the preservation of Mrs. Anderson's life. This fact, however, if true, would have been favorable to defendant.

"There is no hard and fast rule that the expert cannot be asked a question that coincides with the ultimate issue in the case. 'We think the true rule is that admissibility depends on the nature of the issue and the circumstances of the case, there being a large element of judicial discretion involved. . . . Oftentimes an opinion may be received on a simple ultimate issue, even when it is the sole one, as for example where the issue is the value of an article, or the sanity of a person; because it cannot be further simplified and cannot be fully tried without hearing opinions from those in better position to form them than the jury can be placed in.' (Citations.) In the present case there was no other practicable way of framing the questions if they were to serve the purpose of obtaining the benefit of the witness' expert knowledge as to matters on which enlightenment of the jury by the expert was proper. (Citations.)"

There is a very enlightening discussion of this question in Wharton's Criminal Evidence, 11th edition, volume 2, section 957, page 1682, where it is stated:

"Two correlated questions arise in connection with the testimony of an expert witness as to the 'ultimate fact':

"(1) Whether an expert witness may testify as to his opinion as to 'the ultimate fact in issue.'

"(2) If he can testify as to the ultimate fact, whether his testimony must be in the form of an opinion, or whether it may be in the form of a fact.

"On the first question the courts, and in some instances the same court, have widely differed. In some cases it is held that such testimony is not admissible, on the ground that it invades the province of, and substitutes the witness for, the jury, the rule commonly announced being that an expert witness cannot give his opinion upon the very question or fact which is in issue and is to be determined by the jury. On the other hand, many other courts, and in some instances the same courts, in allowing an expert witness to state his opinion as to the ultimate fact in issue, if not in terms, at least in effect, repudiate the contrary position. When the conditions are such that they can be made plain, distinct, and obvious, and the conclusions to be drawn therefrom are matters of common knowledge, then it is the province of the jury to form their own opinions, and expert testimony is inadmissible.

"In some cases the courts do not seem to have hesitated to allow the expert witness to state his opinion as to whether certain hypothetical facts assumed to be true, or the facts proven to exist in the case at bar, or what facts, could or would give rise to the result complained of but, as pointed out above, they seem to disagree on the question whether he may state his opinion as to whether the facts proven or admitted to exist in the case at bar did or did not in fact give rise to that result, considering the first question as one within the province of an expert witness, but the second as one purely within the province of the jury which the witness must not invade.

"It seems that the distinction is supertechnical, and as pointed out in the quotation from 11 R.C.L. p. 583, it is absurd to admit opinion evidence as to whether a certain state of facts would produce a certain result which would be of little pertinency to the issue in the case, and exclude opinion evidence of the highest pertinency on the very point in issue. The rule excluding such evidence is predicated on the fallacious theory that it invades the province of the jury. It may be noted, however, that such evidence, which the jury may believe or disbelieve, is no more binding on them than

opinion evidence on the evidentiary facts from which they would find the ultimate fact. Furthermore, some ultimate facts in their inherent nature are such that the evidentiary facts to prove the same are unintelligible to any mind except that of the expert, and unexplainable to a person of ordinary experience and skill. It would, therefore, seem to be little less than useless, if not absurd, to require the expert to testify or state his opinion as to the evidentiary facts, from which the jury would (because of the inherent nature of such facts) be unable to find the ultimate fact, and refrain from stating his opinion, the soundness of which the jury are at liberty to accept or reject, on the very fact in issue. An adherence to the rule excluding the opinion of an expert witness as to the ultimate fact confines the province of such witness largely to a statement or explanation of the scientific and technical processes by which he in his mind reaches a certain conclusion as to the ultimate fact, without stating that conclusion, and leaves to the jury the impossible task of determining that fact from premises of which they are ignorant, perhaps, even after the statements and explanations of the witness.''

We believe, therefore, that there is no hard and fast rule that experts may not be asked questions that coincide with the ultimate issue in the case, and that the true rule is that admissibility depends on the nature of the issue and the circumstances of the case, there being a large measure of discretion involved. We believe further that the modern tendency is against making a distinction between evidentiary and ultimate facts as subjects of expert opinion.

Appellants' next contention is that there was prejudicial error in allowing expert testimony to be based upon hospital records introduced into evidence. The specific questions and answers complained of by appellants are as follows:

''Doctor, would you say that the condition of the woman in the hospital upon the facts I have given you was, in your opinion, a result of the treatment on Monday and on Friday? A. Yes, I believe so. Q. Can you state if there was anything in the hospital records which I have shown you to indicate whether or not the woman prior to her operation had been pregnant? A. Yes, there is that evidence.'' There were a number of questions leading up to these questions and a number of questions on the same subject immediately following them, but none of the questions were objected to in the trial court and we deem it unnecessary to prolong this opinion by discussing the propriety of the questions. A defendant

may not permit testimony to be given without objection in the trial court and then urge its inadmissibility for the first time on appeal.

Appellants next contend that it was error for the trial court to allow an expert opinion as to the cause and the time of the commission of an abortion. The questions and answers objected to are as follows:

"Mr. Phelps: Q. Doctor, assuming the facts that I have given you here in my hypothetical question I now ask you to assume an additional set of facts:

"Assuming,—in other words, the woman is the same woman, she is pregnant, she missed the same indicated period and the instrument, according to her description, was used, same treatment I described was given to her on Friday, October 21st——

"I now ask you to assume the following facts: Assume further that after the event of Friday that the woman felt fairly well on Saturday, the 22nd of October, that she also felt fairly well on Sunday, the 23rd of October, but that on Sunday afternoon, the 23rd of October, there commenced some slight vaginal discharge, apparently blood and dark in color, and that on Monday, October 24th, the vaginal discharge continued and she felt cramps and pain which increased in intensity during the day until by nightfall it assumed the severity of what she described as labor pains; I ask you if, in your opinion, the additional facts and conditions which I have asked you to assume could be or would be the result or effect of the occurrence of Friday, the 21st? A. Yes, that is the time sequence that is reasonable and that is essentially the natural history of an abortion as you have outlined it."

However, it appears from the record that no objections were made to the questions now complained of, and the appellants therefore are not entitled to urge such objection on this appeal. What we have hereinbefore said as to the first contention of appellants applies to the arguments advanced by appellants as to this contention.

Appellants contend further that "it was an abuse of the trial court's discretion to disallow an experiment to be conducted in court to prove that an instrument alleged to have been used upon the complaining witness would burn flesh." The complaining witness testified that Pierce inserted a vaginal speculum in her private parts, and with it a rod which caused an ache in her private parts, and that the rod remained inserted in her for two hours, and during said time

Pierce removed it; he withdrew it and let it rest for a minute, and inserted it again; the vaginal speculum remained inserted all the time; he told her he thought he was getting somewhere, and that he was almost through. Dr. Carr referred to the rod as an electrode or heating tip of a high frequency heating mechanism which could be used to secure an abortion; it is in the shape of a uterine sound, which has at the ends of it a curvature, or the curved tip approximately that size and with that radius and it is used to be passed into the cervical canal and into the cavity of the uterus; it is the proper shape and size; it was referred to by the prosecution as a vaginal electrode and by appellant Ross King as a nasal electrode.

Appellant Pierce testified the electrode could not be connected with a short wave diathermy machine unless special arrangements were made, a special cord would be required; that if the electrode was connected with a diathermy machine and the electrode was placed in the vagina of a woman and turned on it would burn a hole in her. Appellants then sought permission of the court to perform an experiment demonstrating the instrument. The prosecution then objected as follows:

"Mr. Phelps: Objected to as incompetent, irrelevant and immaterial. The man has testified as to what it will do.

"Mr. Hennessy: We want to demonstrate it.

"Mr. Phelps: Accumulative.

"Mr. Hennessy: I want to demonstrate that machine. A fair proposition, your Honor.

"Mr. Phelps: No showing that is a type of machine that was in the room at the time or whether it has been doctored up at any time since.

"Mr. Hennessy: Q. Is that the machine that was in the room at that time?

"Mr. Phelps: If you please, Mr. Hennessy, I haven't completed my objection yet.

"There is no showing that that is the machine that was there and used or whether it has been changed since or doctored up in any way. I have no objection to a demonstration as such but it is conducted merely as a demonstration, but conducted by interested witnesses—I think that the matter of demonstration is cumulative evidence which goes to your Honor's discretion to permit it or not. The witness has already testified as to what would happen and I think that further demonstration is matter of cumulation and goes to your Honor's——

"The Court: I am not going to have any demonstration here on any machine unless I am satisfied that every condition is

identical with the conditions referred to by the witnesses in their testimony. I am doubtful if that can be done.''

In *People* v. *Ely*, 203 Cal. 628, the court said at pages 632-633 [265 P. 818] : ''The testimony comes within the class of testimony designated as experiments, which, when shown to have been made under the same conditions as those existing in the case itself, are admitted. The reception or rejection of such testimony lies largely within the discretion of the trial court, with this limitation—that it must be shown that substantially the same conditions existed, and further that the evidence shall be of such a character as to aid rather than to confuse the minds of the jurors with collateral matters.''

We believe that it was for the trial court to determine whether or not the experiment could be performed under substantially the same conditions and whether it would be of such a character as to aid rather than confuse the jurors. We are unable to agree with appellants' contention that the trial court abused its discretion in not permitting the experiment proposed by appellants.

 Appellants next contend that it was error for the trial court to allow the introduction of the hospital records. When these records were offered in evidence appellants' counsel made the following objection: ''Object on the grounds they are secondary evidence. The doctor (who attended the complaining witness) has testified here, his evidence is in the record and it is nothing now but secondary evidence.''

The question of the admissibility of hospital records is discussed by Chief Justice Gibson in *Loper* v. *Morrison*, 23 Cal.2d 600, at page 607 [145 P.2d 1], as follows:

''Defendant also contends that the trial court erred in excluding from evidence a portion of a hospital chart called a 'nurses' record.' The chart contained entries by nurses relative to the condition of the plaintiff during the time she spent in the hospital after the accident, and was offered to refute testimony as to the nature and extent of plaintiff's injuries. Defendant contends that the record should have been admitted under sections 1953e-1953h of the Code of Civil Procedure, known as the 'Uniform Business Records as Evidence Act.' Section 1953f provides: 'A record of an act, condition or event, shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court,

the sources of information, method and time of preparation were such as to justify its admission.' Section 1953e provides: 'The term "business" as used in this article shall include every kind of business, profession, occupation, calling or operation of institutions, whether carried on for profit or not.' Section 1953g requires that 'This article shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those States which enact it.' The purpose of this act is to enlarge the operation of the business records exception to the hearsay evidence rule. The common law exception is based on the assumption that records kept in the general course of business usually are accurate, and may be used, in case of necessity as evidence of the matter recorded. (Citation.) But the exception has been hedged about with so many burdensome restrictions that legislation has been necessary to secure widespread use of such records. Speaking of the desirability of similar legislation, the United States Supreme Court, in the recent case of *Palmer* v. *Hoffman*, 318 U.S. 109 [63 S.Ct. 477, 481, 87 L.Ed. 645, 144 A.L.R. 719], stated: 'The several hundred years of history behind the Act (Wigmore, *supra,* secs. 1517-1520) indicate the nature of the reforms which it was designed to effect. It should of course be liberally interpreted so as to do away with the anachronistic rules which gave rise to its need and at which it was aimed.'

"The business entry statutes are not limited to entries in commercial enterprises, and hospital records are properly included within their operation. (Citations.) There is no reason to believe that a hospital record is not as truthful as a record kept by a commercial firm. It is a record upon which treatment of the patient is based, and experience has shown it to be reliable and trustworthy. (See discussion in *Globe Indemnity Co.* v. *Reinhart,* 152 Md. 439, 447 [137 A. 43].) It is the object of the business records statutes to eliminate the necessity of calling each witness and to substitute the record of the transaction or event. It is not necessary that the person making the entry have personal knowledge of the transaction. (Citations.) Plaintiff cites several California cases in support of its contention that hospital records are not admissible in evidence. (*Estate of Flint,* 100 Cal. 391 [34 P. 863] ; *Pierce* v. *Paterson,* 50 Cal.App.2d 486 [123 P.2d 544] ; *Lusardi* v. *Prukop,* 116 Cal.App. 506 [2 P.2d 870].) All of these cases were tried before the Uniform Act became effective in this state, and are not controlling."

It clearly appears from the record that all of the records were made in the regular course of the business of the hospital and that they were made at or near the times of the various acts recorded. While it may be that there frequently are some things recorded on a hospital chart that in a strict sense may not be admissible, such items can be excluded therefrom upon the making of a proper objection, or appropriate instructions may be offered covering such items. Here the only objection was that the records were secondary evidence, which was not a good objection in view of the "Uniform Business Records as Evidence Act." We conclude, therefore, that the trial court did not err in admitting the hospital records.

■ Appellants' final objection is that the trial court erred in denying appellants' motion for a new trial upon the ground of newly discovered evidence.

In 8 California Jurisprudence section 452 at page 427 it is stated: "The claim of newly discovered evidence warranting a new trial is universally looked upon by the courts with distrust and disfavor. Public policy demands that a litigant should be compelled to exhaust every reasonable effort to produce at his trial all existing evidence in his behalf. It has been said that the circumstance that the testimony has just been discovered when it is too late to introduce it is so suspicious that courts require the very strictest showing of diligence."

In support of their motion appellants filed several affidavits. One was the affidavit of a druggist who stated that appellant King had told him he was opening a physiotherapy and chiropractic office in San Francisco and that King gave him a number of his cards and that he gave one of the cards to a Mr. W who inquired about a good physiotherapist; that W made no inquiry about drugs or treatment for an abortion. Another was an affidavit of Mr. W denying that he ever discussed the matter of an abortion with the complaining witness or anyone else and never sent her to any doctor or surgeon and denying that she had told him after she left the hospital that she had told her doctors that Ross King had attempted to abort her, and had then stated to him, "My God, what could I do, I thought I was going to die." Appellants also filed a joint affidavit by themselves stating that they did not learn of such evidence in time to produce it at the trial.

As stated in *People* v. *Weber*, 149 Cal. 325, at page 350 [86 P. 671]: "It is to be remembered that a wise discretion is

vested in the trial court in determining the weight to be given to the statements contained in affidavits upon motion for new trial. This discretion is to be exercised in determining the diligence shown, the truth of the matters stated, and the materiality and probability of the effect of them, if believed to be true. Moreover, it is to be remembered that a trial court is justified in regarding with distrust affidavits of newly discovered evidence in motions for new trial. (Citations.) Potent as this affidavit might have been, if believed, it may not be said that the trial court did not exercise a sound discretion in discrediting it, and so in denying the motion in support of which it was brought forward.''

We are unable to say that the trial court was not fully justified in concluding that appellants failed to show that they had not had a reasonable opportunity to produce this same evidence at the trial. Furthermore it was for the trial court to determine what weight should be given to the statements contained in the affidavits.

We are convinced that the trial court did not abuse its discretion in denying appellants' motion for a new trial.

We have read the record in this case carefully. In our opinion the evidence pointing to the guilt of appellants was overwhelming and it is difficult to understand how a jury could have failed to find the defendants guilty. We believe that no substantial error was committed, and that even if some of the claims of error made by appellants were meritorious we would be unable to hold that such error was reversible error, in view of provisions of section 4½ of article VI of our state Constitution that ''No judgment shall be set aside, or new trial granted, in any case, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.''

The judgment and order are affirmed.

Goodell, Acting P. J., and Dooling, J., concurred.