JONES *v.* STATE

[No. 15, October Term, 1954.]

*Decided December 9, 1954.*

530

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Harry H. Cropper,* for the appellant.

*Ambrose T. Hartman,* Assistant Attorney General, with whom were *Edward D. E. Rollins,* Attorney General, and *Hamilton P. Fox, Jr.,* State's Attorney for Wicomico County, on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

The appellant was convicted of abortion. The testimony of the prosecuting witness as to pregnancy—an essential element of the offense, Code (1951) Art. 27, Sec. 3—was somewhat vague, and to the State, evidently insufficient. At the first trial of the charge, the jury failed to agree. At the second trial the State sought to prove the pregnancy, as it had in the first, by the records of the Peninsula General Hospital in Salisbury where the victim had been treated after the abortion. At the time of her treatment, Dr. I. Rivers Hanson was in charge of the department of obstetrics and gynecology at the hospital. He brought with him to court the record of the hospital showing the admission and treatment of the victim, made in the regular course of business. It is conceded that Dr. Hanson never treated or even saw the patient and had no personal knowledge of her condition, as it is, the record showed that she had been attended by a Dr. Parham, who examined her after her admission on March 13, 1950, and performed an operation on her a few days later. Defense counsel moved to exclude "any testimony from Dr. Hanson based upon

this hospital record for the reason that this hospital record was not made as a result of an examination by this doctor." After some further questioning by the State's Attorney, which brought out that Dr. Hanson was in charge of the department in March, 1950 and that the records were made under his supervision, the State's Attorney remarked: "Now we think the records are admissible." Defense counsel renewed his motion "on the further ground these records are hearsay." The motion was overruled. Dr. Hanson was then asked: "referring to the hospital records which you have, tell * * * the jury, * * * just what they reveal in regard to the patient Anna Mae Moore Camper?" Defense counsel stated that he would like the record to show "that the defense objects to the use of the hospital records in this case, generally, by this witness."

At this point the witness asked: "Shall I use the records or not? I can testify with or without them, whatever you want." The State's Attorney replied: "If you can testify without them, we prefer that." The court stated: "As we understand, the records are only used for the purpose of refreshing his recollection." The witness then testified, entirely without reference to the record, in response to the State's Attorney's question: "Tell the jury what you can about this patient's admittance and treatment?"

The hospital record was never offered in evidence. It was not before the jury, is not in the transcript here. When he took the stand, Dr. Hanson did not read the record to the jury. He did not purport even to summarize it. If the hospital record had been offered in evidence, it should have been admitted. The appellant's claim to the contrary has no merit. In several recent cases we have held that hospital records are admissible under the statute, Code (1951), Art. 35, Sec. 68, which expressly declares that "* * * lack of personal knowledge by the entrant or maker, may be shown to affect the weight, but not the admissibility thereof." *Shirks Motor Express v. Oxenham,* 204 Md. 626, 635; *Lee v. Housing*

*Authority of Baltimore,* 203 Md. 453, 459; *Bethlehem-Sparrows Point Shipyard v. Scherpenisse,* 187 Md. 375, 380. These cases dealt with statements of occurrences prior to admission, made to the hospital authorities by the patient or other persons and entered in the case history. We held that they were admissible, if pathologically germane to the case, despite their hearsay character. Cf. *Weis v. Weis* (Ohio) 72 N. E. 2d 245, 249; *Watts v. Delaware Coach Co.* (Del.) 58 A. 2d 689; and *Commonwealth v. Harris* (Pa.) 41 A. 2d 688. They go far beyond the statements of medical findings in the instant case.

The appellant relies strongly upon the case of *Baltimore & Ohio R. R. Co. v. Zapf,* 192 Md. 403, but we think the case is distinguishable. There, an X-ray report made by a radiographer to whom a patient had been referred by an attending physician, was said to be inadmissible when offered in evidence by the attending physician to whom it had been transmitted. But it was pointed out that the witness had not examined the plates and was not competent to express an opinion thereon, and that the report was not a hospital record but a private letter in the nature of an opinion. The exact holding was that the admission of the report was not reversible error, because the full contents of the report had been previously brought out before the jury, without objection.

We find no substance in the appellant's contention that the statute is not applicable to criminal, as distinguished from civil cases, and if so construed, would be unconstitutional under that portion of Article 21 of the Maryland Declaration of Rights providing: "That in all criminal prosecutions, every man hath a right * * * to be confronted with the witnesses against him * * *". We find nothing in the statute to support such a limitation, and it has been assumed, if not decided, that it is applicable in criminal prosecutions. *O'Donnell v. State,* 188 Md. 693; *Morrow v. State,* 190 Md. 559. See also *People v. King,* 104 Cal. App. 2d 298, 231 P. 2d 156. In

*Johns v. State,* 55 Md. 350, 359, it was held that the right of confrontation does not apply to documentary evidence, and that the Legislature has the constitutional power to change the common law rules of evidence as to what documents are admissible and the weight to be attributed to them, even in criminal cases. This is the view taken in other states where the question has been raised. *State v. Hayes,* 127 Conn. 543, 18 A. 2d 895; *People v. Nisonoff,* 293 N. Y. 597, 59 N. E. 2d 420; *People v. Purcell,* 22 Cal. App. 2d 126, 70 P. 2d 706; *State v. Guaraneri* (R. I.) 194 A. 589; *Cochran v. Commonwealth,* 122 Va. 801, 94 S. E. 329. In *Snyder v. Massachusetts,* 291 U. S. 97, 107, Mr. Justice Cardozo said: "Nor has the privilege of confrontation at any time been without recognized exceptions, as for instance dying declarations or documentary evidence. * * * The exceptions are not even static, but may be enlarged from time to time if there is no material departure from the reason of the general rule." We think the *Johns* case is controlling on the point.

The real question in the case is the effect of the admission of Dr. Hanson's testimony. As has been said, he did not read or summarize the record. He was not offered as an expert, nor did he testify as one, on the assumption that the statements and facts in the record were true. Rather, he testified over objection, as the doctor in charge of the patient, as if from personal knowledge, that the examination "* * * revealed a recent pregnancy which had been aborted * * *." He said that the patient suffered from fever and other signs of infection, that "*we* were able to ascertain by examination." He answered, as if he himself knew as a fact, questions asked by the State's Attorney, such as "What was *your* testimony * * *?" and "If *you* know." (Emphasis added) The record served merely as an excuse for Dr. Hanson to testify as if he were an attending physician. The State's Attorney asked him to testify without it. The court said he could use it to refresh his recollection, as if it were his own notes. Can it be doubted seriously

that the impact on the jury of the recital of facts and the giving of opinion by a doctor who testified as if he knew personally whereof he spoke, would be far greater than the cold words of a printed and typed record, the infirmities of which are recognized by the very statute which makes it admissible?

We are told that the judgment should be affirmed for two reasons. The first is that the appellant did not object on the ground that the record was not formally in evidence, but objected to any testimony from the witness based on the record. The second is that the appellant cannot justly claim prejudice because of testimony without reference to the record following his statement that he could so testify, the State's Attorney's urging that he do so, and the Judge's remarks as to the refreshing of his recollection, because again, there was no objection or motion to strike on this ground. Support is sought for a finding of lack of prejudice in the mention of the witness, on direct examination, that Dr. Parham had examined the patient and his admission, on cross-examination, that he himself had not, and that the findings were those of Dr. Parham and a pathologist, Dr. McCullough.

We think that to weave a waiver from these few and thin strands plucked from the whole fabric of the proceedings, is not compatible with the appellant's consistent effort to keep the inadmissible testimony out, with a ruling by the court on the point, and the prior decisions of this Court. The cloak of presumed innocence which an accused wears as he comes into the courtroom may be stripped from him only by evidence which the established rules of the law allow to be considered against him. Of course, he, or his counsel for him, may waive the right to keep out inadmissible testimony, and if this is done, the evidence which comes in has the same probative force as if it were competent. *Martin v. State*, 203 Md. 66. Again, "If inadmissible evidence is admitted over objection and the same evidence is later admitted without objection, or produced by the party who

objected, the error is harmless." *Linkins v. State,* 202 Md. 212, 224, and cases cited. We have neither situation here. As soon as Dr. Hanson began to testify, appellant's counsel moved to exclude "any testimony from Dr. Hanson based upon this hospital record" because the doctor had not examined the patient. After the witness had explained that he was in charge of the hospital department involved, counsel renewed his objection "on the *further* ground" that the record itself was hearsay. A moment later, counsel said: "I would like the record to show that the defense objects to the use of the hospital records in this case, generally, by this witness." The court said: "Motion granted." Clearly the defense made timely objection to the testimony of Dr. Hanson on the ground that it was hearsay. Clearly the court considered and overruled the objection. This is enough to preserve the point for the appeal here. The objections were generally to all of the doctor's testimony as hearsay—and it was—and the court's ruling was fully responsive. There was, therefore, no need for the appellant to object to each subsequent question or to move to strike out each answer or all of the testimony. Waiver should not be inferred if, by fair intendment, the accused stood on his rights by timely objection so that the court could rule on the point and the State had the opportunity to offer properly the evidence it sought to introduce in violation of the rules. *Miller v. State,* 174 Md. 362, 366, 367; *Asner v. State,* 193 Md. 68, 73, 74; *Plank v. Summers,* 203 Md. 552, 555, 556; *Linkins v. State, supra; Davis v. State,* 189 Md. 269, 271, 275; and see *Smith v. United States,* 337 U. S. 137, 93 L. Ed. 1264.

The appellant is not to be put out of court because she objected to the hospital record itself as hearsay and as violative of the right of confrontation, as well as to Dr. Hanson's testimony as hearsay. She objected to both and she was right as to the testimony of Dr. Hanson. That she was wrong in her claim that the record was inadmissible does not justify a finding that she waived her objection on the ground as to which she was right.

The error was not cured by Dr. Hanson's reference, in direct and cross-examination, to the parts played by Doctors Parham and McCullough. His exact words on direct, speaking of the appellant's admission to the hospital, were: "* * * at which time the examination by Dr. Parham * * *" gave the revelations mentioned. The next sentence in the same answer was that there were certain symptoms "* * * that *we* were able to ascertain by examination." The impression well could be that both examined her.

One does not lose the benefit of objection to inadmissible testimony by cross-examining on the subject. *MacEwen v. State,* 194 Md. 492, 504, 505. There the Court adopted this language as stating the rule: "When testimony has been admitted and an exception noted, counsel may deem it necessary to cross-examine the witness on the subject, and if it is simply a cross-examination he ought not to be deprived of his exception, provided the record shows he does not intend thereby to waive it, and that ought to be inferred when it is strictly cross-examination."

To hold that the effect of Dr. Hanson's testimony as an expert with personal knowledge was nullified by his admission on cross-examination that the findings were those of Doctors Parham and McCullough, would destroy completely the right to object or the right to cross-examine without waiving that right.

The appellant certainly did not either waive or abandon in this Court any of the objections or grounds of defense which she had established below. Her brief says: "The sole question sought to be raised on this appeal is the admissibility of the testimony of Dr. Hanson." In the argument in the brief, it is said: "It is obvious that Dr. Hanson's knowledge of the case was gained solely from a perusal of the hospital records relating to it. He never talked to Anna Mae, never examined her * * *. In effect, what the lower court did in admitting Dr. Hanson's testimony, was to permit him to say that Anna Mae was the object of an abortion because Dr. Parham

had told him so; that Anna Mae was pregnant because Dr. McCullough told him so. It is submitted that the fact that Dr. Hanson's knowledge was gained from reading the hospital records does not make his testimony admissible under any exception to the Hearsay Rule."

We think the appellant was prejudiced by the admission of Dr. Hanson's testimony and that the judgment should be reversed and the case remanded for a new trial.

*Judgment reversed, with costs, and case remanded for new trial.*

HENDERSON, J., filed the following dissenting opinion, in which DELAPLAINE, J., concurred.

I agree with the statement in the majority opinion that the hospital record was admissible and that its admission, in a criminal case, would not violate the constitutional right to "confrontation". Indeed, I think it would have been admissible even in the absence of statute. Code (1951), Art. 35, sec. 68. In *Globe Indemnity Co. v. Reinhart,* 152 Md. 439, 445-452, decided before the first adoption of the statute in 1929, a hospital record, identified by the entrant, recorded pertinent information given to her by a nurse who was not called. Despite its hearsay character, it was held to be admissible under an exception to the hearsay rule "based upon the circumstantial guarantee of trustworthiness of the record itself, and upon the inconvenience and well-nigh impossibility of producing witnesses who could from their own personal knowledge testify to the truth of the entries made." This decision was cited with approval by Wigmore as a "liberal" one, under a section dealing with the cases, pro and con, on the question independent of statute. 5 Wigmore, Evidence (3d ed.) § 1530. See also, Notes 75 *A. L. R.* 378.

As pointed out in the majority opinion, the recent cases under our statute dealt with an extension of the common law rule to include instances where the entries were made in connection with case histories of occurrences prior to

the patients' admission, and not with medical findings carrying their own intrinsic guarantee of reliability. Even before the statute was amended in 1947 to specifically include "profession" within the term "business", we held without reference to the statute, and following Wigmore despite a split in the authorities, that testimony of the attending physician based in part on information received from a nurse or attendant was admissible. *Yellow Cab Co. v. Henderson,* 183 Md. 546, 553. Since the medical findings in the instant case would have been admissible regardless of the statute, the argument that a change in the common law rule deprived the accused of a procedural right, existing when the Constitution was adopted, falls to the ground. I agree with the majority, however, that under the cases cited the contention would be without merit, even if the evidentiary rule had been changed.

For all practical purposes, I think the hospital record in the instant case was put in evidence. It was produced by Dr. Hanson, shown to opposing counsel, and Dr. Hanson held it in his hands when he took the stand. Upon objection to testimony based upon the record, on the ground that it was not made as a result of an examination by the witness, the State's Attorney brought out that Dr. Hanson had been in charge of the department and the record had been made under his supervision. Thereupon, the State's Atotrney remarked: "Now, we think the records are admissible", and a motion to exclude on the ground that "these records are hearsay" was overruled. True, they were not marked as an exhibit or read to the jury. Reading such records would ordinarily have little significance to laymen, and the mere failure to have the stenographer stamp a document, that had been offered and ruled in, is clearly not controlling. Dr. Hanson was then asked to tell the jury "referring to the hospital *records which you have,* * * * just what *they reveal* in regard to the patient * * *". There was no objection on the ground that the record had not been formally introduced. His reply was that

the patient was admitted on March 13, 1950, "at which time the examination by Dr. Parham, our resident at the time, revealed a recent pregnancy which had been aborted, or miscarried, if you prefer that term, and all of the pregnancy tissue had not been removed; part of it remained in the cavity of the uterus. * * *." There was no motion to strike on the ground that the answer was not responsive, or on any other ground. The witness was qualified as an expert and could properly be asked to explain to the jury the medical significance of the "cold words" of the entries, or even to express an opinion based thereon. In *Bethlehem-Sparrows Point Shipyard v. Scherpenisse*, 187 Md. 375, 379, and *Marshall v. Sellers*, 188 Md. 508, 517, it was held that testimony by medical experts, based in large part upon facts gleaned from a perusal of hospital and autopsy records, was admissible. See also *Industrial Service Co. v. State*, 176 Md. 625, 634.

In the instant case it is not entirely clear whether the testimony of Dr. Hanson as to the pregnancy and abortion was the recorded conclusion of Dr. Parham, based upon symptoms revealed by his examination and other scientific data, or the conclusion of the witness, based on Dr. Parham's examination and other data. But, assuming the record to be in evidence, the testimony would be admissible on either theory. Counsel for the accused had an opportunity to examine the record and to cross-examine the witness in regard thereto. He did both. In fact, he brought out that the witness had not personally examined the patient, and that the findings recorded were those of Dr. Parham and Dr. McCullough, the hospital pathologist. Dr. Hanson never claimed to be the attending physician, and I do not see how the jury could possibly have been misled into thinking that he was. On a retrial the same questions could properly be put to Dr. Hanson, provided the stenographer is called upon to use his rubber stamp. Moreover, the importance of his testimony seems greatly exaggerated. There can be no reasonable doubt that the prosecuting witness had a miscarriage, or that the records showed this fact,

which was virtually undisputed. The real issue in the case was what, or who, produced the miscarriage, not the fact that she had one. Cf. *Kiterakis v. State,* 144 Md. 81, 83.

It is said, however, that because of the colloquy between the question and answer, wherein the witness stated that he could testify without using the record, which the State's Attorney said he would prefer, followed by the court's statement that he understood the records would be used to refresh recollection, a prejudicial error was committed. Of course, the witness could not refresh his recollection by a record he did not make and as to facts of which he had no personal knowledge. But there are several answers to this contention. First, there was no objection. The court was evidently under a misconception as to what the testimony might be. If the witness had personal knowledge he could properly use the record to refresh his recollection. When it appeared, as it did in the next sentence spoken by the witness, that he had no personal knowledge, defense counsel could have, but did not, move to strike it out on this ground. Defense counsel thought so little of the point that the incident is not relied on in the brief, or even mentioned in the statement of facts. The only points argued are that the records are inadmissible and in violation of a constitutional right, and that any testimony based thereon is inadmissible as hearsay. I think all of these contentions are unsound. The only ruling objected to was correct.

What the witness evidently had in mind was simply that he had studied the record both at that time and at the time of the previous trial, hence he was so familiar with the findings contained therein that he did not need to refer to it in order to state the substance of those findings. If the jury was led to believe, from the court's comment, that he had personal knowledge, it was immediately made clear by his answer to the question as to what the record showed, and by his subsequent cross-examination, that he had no personal knowledge. I can

see no prejudice to the accused in any view of the case. I think the judgment should be affirmed.

I am authorized to say that Judge Delaplaine agrees with the views here expressed.